Donald PARADIS, Petitioner–Appellant,

v.

A.J. ARAVE, Warden, Idaho State Penitentiary; Al Murphy, Director, Idaho State Correctional Institution, Respondents–Appellees.

No. 87–4100.

United States Court of Appeals, Ninth Circuit.

Argued, Submission Deferred Aug. 4, 1988.

Resubmitted Dec. 20, 1991.

Decided Jan. 23, 1992.

Edwin S. Matthews, Jr., Coudert Brothers, New York City, for William L. Mauk, Skinner, Fawcett & Mauk, Boise, Idaho, for petitioner-appellant.

Lynn S. Thomas, Deputy Atty. Gen., Boise, Idaho, for respondents-appellees.

Before ALARCON and BEEZER, Circuit Judges, and NIELSEN *, District Judge.

ALARCON, Circuit Judge:

Donald Paradis, a state prisoner, appeals from the district court's denial of his petition for a writ of habeas corpus.

Paradis seeks review of his conviction on the following grounds:

One. The evidence was insufficient to demonstrate that Kimberly Palmer was killed in the state of Idaho.

Two. The state failed to preserve exculpatory evidence.

Three. The introduction of evidence of another murder for which he was acquitted deprived him of his right to due process and violated the Double Jeopardy Clause.

Four. He was deprived of the effective assistance of counsel.

Five. He was denied a fair trial by the prosecutor's misconduct.

Six. The state trial judge erred in refusing to grant Paradis' motion for change of venue.

We conclude that Paradis has failed to demonstrate a violation of his federal constitutional rights during the guilt phase of the state-court proceedings. Accordingly, we affirm the district court's denial of that portion of the petition for habeas corpus relief regarding the judgment of conviction for first-degree murder.

Paradis also alleges that Idaho's death-penalty statute is unconstitutional. In our decision in *Creech v. Arave*, 947 F.2d 873 (9th Cir.1991), we held unconstitutional the portion of Idaho's death penalty challenged in this appeal. Accordingly, habeas corpus relief must be granted concerning the penalty phase of the state-court proceedings.

* Honorable Leland C. Nielsen, United States District Judge for the Southern District of San Diego, sitting by designation.

## FACTS

The underlying facts are set forth in great detail in *Paradis v. Arave,* 667 F.Supp. 1361 (D.Idaho 1987) and *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984). At about 12:45 a.m. on June 21, 1980, Kimberly Palmer and Scott Currier checked into the Paul Bunyan Motel in Spokane, Washington. This motel was around the corner from Paradis' house. Shortly thereafter, Currier demanded his money back from the motel desk clerk. Currier told the clerk that he had found guns missing from the blue and white Volkswagen van he was driving. Currier also stated that he knew who took them, and he was going to retrieve them.

At approximately 6:45 a.m. on June 21, 1980, Ruth Jones saw a blue and white Volkswagen van with two or three individuals drive up Mellick Road in Post Falls, Idaho. About a half-hour later, Jones saw Paradis, Thomas Gibson, and Larry Evans walking toward her house in the opposite direction. On June 22, 1980, the police found the bodies of Palmer and Currier off of Mellick Road near the overturned Volkswagen van.

## I.

## DISCUSSION

### A. *Sufficiency of the Evidence*

■ Paradis argues that the physical evidence and medical testimony presented at trial was insufficient for the jury to determine beyond a reasonable doubt that the murder of Palmer occurred in Idaho. He further alleges that evidence relating to a labial tear suffered by Palmer is irreconcilable with her death in Idaho. We have independently reviewed the entire record of the guilt phase of the trial. We conclude that a rational jury could have been persuaded beyond a reasonable doubt that Palmer was murdered in the state of Idaho.

Paradis "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v.* *Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). The evidence must be reviewed "in the light most favorable to the prosecution." *Id.* at 319, 99 S.Ct. at 2789. "All reasonable inferences supporting the conviction must be drawn, including decisions regarding the credibility of witnesses." *United States v. Beecroft,* 608 F.2d 753, 756 (9th Cir.1979). State court factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 455 U.S. 591, 591–92, 102 S.Ct. 1303, 1303–04, 71 L.Ed.2d 480 (1982).

The testimony adduced at trial indicates that Palmer's body was found face down in a stream bed. The body was located at the bottom of a steep slope about eighty feet away from the van. The terrain leading to the stream was covered with underbrush and debris. To reach the stream, a high, three-strand barbed wire fence located about halfway down the slope had to be crossed. In contrast, Currier's body was found in a blue sleeping bag about twenty to twenty-five feet down a steep embankment.

Palmer was wearing a pair of jeans, shoes, and socks. The front and back of the jeans were ripped. Her shirt was found beneath her body. An empty red sleeping bag was found about twenty feet in front of the van.

Dr. William J. Brady, the Oregon State Medical Examiner, testified that Palmer died of manual strangulation. Her lungs contained an unusual amount of fluid. He testified that this was consistent with the aspiration of water prior to her death after she had been manually strangled and placed face down in the stream. In addition, he noted that Palmer's body was not as decomposed as Currier's. Dr. Brady stated that in his opinion Currier had been dead a number of hours longer than Palmer.

Dr. Charles Larson, a defense medical expert, testified at the trial in state court that in his opinion Palmer was dead when she was placed in the stream. Dr. Larson stated that water would probably not enter

the lungs if the dead body were placed in the stream when rigor mortis were present. After rigor mortis disappeared, the muscles of the throat would loosen and might allow water to enter. Detective Terry Thomason stated at trial that Palmer's body was very stiff when he found it. Dr. Larson further opined that the rates of decomposition of the two bodies would be altered by Palmer's body being put in a stream while Currier's was left in a sleeping bag. Therefore, he did not find it significant that Currier's body was more decomposed than Palmer's body.

Dr. Larson further testified that the tear on Palmer's labia appeared to have been inflicted after death because there was no evidence of blood around the wound. Based on the lack of blood from the wound, Dr. Larson concluded that the wound was probably caused when Palmer's dead body was passed under the barbed wire fence. Pamela Server, a forensic chemist with the Idaho State Crime Laboratory, testified during the state-court proceedings that she saw no blood stains on the jeans when she examined them under ultraviolet light. She did not perform any chemical tests on the jeans.

Detective Thomason testified that most of Palmer's body was lying across the stream. On the day the body was found, there was a heavy rainfall. George Elliot, a lieutenant in the Kootenai County Sheriff's Office, testified that Palmer's jeans were wet when he removed them from her body. William R. Morig, a criminalist for the Eastern Washington State Crime Laboratory in Spokane, testified that exposure to water can interfere with the ability to detect human blood on clothing material.

Clearly, the jury accepted Dr. Brady's testimony and the prosecution's interpretation of the circumstantial evidence, and rejected Dr. Larson's conclusions. The lack of blood on Palmer's jeans does not render the jury's verdict irrational. The jury could have rationally inferred from all the evidence that any blood on the jeans was washed away by the combined effect of rain water and the flow of the stream.

We hold that the circumstantial evidence presented at trial, together with Dr. Brady's testimony, is sufficient, when viewed in the light most favorable to the prosecution, to support the jury's finding that the murder occurred in Idaho.

Paradis' attempts at the evidentiary hearing in the district court to attack the validity of Dr. Brady's testimony, and the cumulative evidence he presented relating to the labial tear does not affect our conclusion that the evidence produced at trial was sufficient to persuade a rational jury that Palmer was murdered in Idaho. In *Sumner*, 455 U.S. 591, 102 S.Ct. 1303, the Supreme Court reiterated its holding in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) by stating that:

> 28 U.S.C. § 2254(d) requires federal courts in habeas proceedings to accord a presumption of correctness to state-court findings of fact. This requirement could not be plainer. The statute explicitly provides that 'a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ..., shall be presumed to be correct.' Only when one of seven specified factors is present or the federal court determines that the state-court finding of fact 'is not fairly supported by the record' may the presumption properly be viewed as inapplicable or rebutted.

*Id.* 455 at 592, 102 S.Ct. at 1304.

The Idaho Supreme Court concluded from its review of the trial record that "[t]here was evidence at trial suggesting that Palmer was still alive when she was placed in the stream bed." *Paradis*, 676 P.2d at 33. The determination of a factual issue in a written opinion by a state court "shall be presumed to be correct." 28 U.S.C. § 2254(d). Paradis has not argued or demonstrated that any of the seven exceptions to the presumption of correctness set forth in 28 U.S.C. § 2254(d)(1)–(7) apply to this case. The factual determinations made in the state court are fairly supported by the evidence in the state court record. Paradis has failed to meet his burden of producing "convincing evidence" that

Palmer was *not* murdered in Idaho. 28 U.S.C. § 2254(d).

### B. *Failure To Preserve Exculpatory Evidence*

■ Paradis contends that the state deprived him of his right to due process by failing to preserve and disclose evidence found at his home that was material to his defense that the murder was not committed in Idaho. He also alleges that the state of Idaho failed to conduct routine police investigations that would have produced exculpatory evidence. This court reviews de novo a claim that the prosecution improperly suppressed exculpatory evidence. *United States v. Monroe*, 943 F.2d 1007, 1012 (9th Cir.1991).

■ Due process requires that the prosecution disclose exculpatory evidence within its possession. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), however, the Supreme Court held that where the government fails to preserve evidence that is only potentially exculpatory, the right to due process is violated only if it possesses "an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534.

In *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Supreme Court modified the *Trombetta* test by imposing the additional requirement that the defendant demonstrate that the police acted in bad faith in failing to preserve the potentially useful evidence. *Id.* at 58, 109 S.Ct. at 337. "The presence or absence of bad faith by the police for the purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 57 n. *, 109 S.Ct. at 337 n. *.

■ The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation. *Id.* at 57, 109 S.Ct. at 337. The *Youngblood* majority strongly disagreed that "the Due Process Clause is violated when the police fail to use a particular investigatory tool." *Id.* at 59, 109 S.Ct. at 338.

Paradis asserts that his due-process rights were violated by the State's failure to preserve a pair of panties and a cord found at Paradis' house during the murder investigation. Paradis failed to raise this claim in his appeal to the Idaho Supreme Court. He raised it for the first time before the district court in his habeas petition.

■ A state prisoner seeking habeas relief in federal court must exhaust his state court remedies. 28 U.S.C. § 2254(b)-(c); *Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Where the state failed to raise the exhaustion defense either before the district court or on appeal, we may consider it waived if it is "perfectly clear that the applicant does not raise even a colorable federal claim." *Granberry v. Greer*, 481 U.S. 129, 135, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987). *See Taylor v. Kincheloe*, 920 F.2d 599, 602 n. 1, (9th Cir.1990) ("[W]here the issues are primarily ones of law and the State has failed in the district court and on appeal to point out the exhaustion defects, we believe the administration of justice would be better served by reaching the merits of [the] claims."); *Stone v. Godbehere*, 894 F.2d 1131, 1135 (9th Cir.1990) ("Where, as here, the state failed to raise an exhaustion argument before the district court, we may consider it waived if the interests of comity, federalism and justice would be served."). In this case, the state failed to raise the exhaustion argument before the district court. The issue was not presented to this court by the state. Accordingly, Paradis' failure to exhaust his remedies is waived.

■ Paradis has failed to demonstrate that the Washington state police acted in bad faith in failing to preserve the panties and the cord. Detective James Hansen and

Detective Donald McCabe of the Spokane County Sheriff's Department testified that the items had not been intentionally destroyed. An extensive but unsuccessful search was made for the missing items. While the loss of this evidence may have been negligent, there is no evidence in this record that the police acted in bad faith in failing to preserve this evidence.

Paradis also asserts that his right to due process was violated by (1) the failure of Dr. Brady to preserve samples, conduct tests, take photographs or record observations at Palmer's autopsy; and (2) the failure of officers from Washington and Idaho to employ investigative procedures to preserve potentially exculpatory evidence.

Paradis has failed to demonstrate that Dr. Brady or the Washington and Idaho police acted in bad faith. Without such proof, we must reject his claim of a due-process violation premised on the failure to perform tests or employ particular investigative procedures. *Youngblood*, 488 U.S. at 59, 109 S.Ct. at 338.

## C. *Evidence Relating to Currier's Murder*

### 1. Due Process

■ Paradis argues that the state's introduction of evidence relating to Currier's murder was so prejudicial that it violated his right to a fair trial. In order to violate due process, the erroneous admission of evidence must render the defendant's trial fundamentally unfair. *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir. 1985). The state introduced evidence relating to Currier's death for two purposes: (1) to prove that Palmer died in Idaho by pointing out the differences between the location and the condition of the bodies of Currier and Palmer; and (2) to show a motive and common plan for the murder of Currier and the permanent silencing of Palmer.

Paradis contends that the evidence of Currier's murder was prejudicial because it related to a crime for which he was acquitted. In *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the Supreme Court rejected the petitioner's

claim that the introduction of evidence relating to a prior acquittal violated due process. *Id.* at 352–54, 110 S.Ct. at 674–75. The Court instructed that the "tradition that the government may not force a person acquitted in one trial to defend against the same accusation in a subsequent proceeding.... [is] amply protected by the Double Jeopardy Clause." *Id.* at 354, 110 S.Ct. at 675. It declined to "use the Due Process Clause as a device for extending the double jeopardy protection to cases where it otherwise would not extend." *Id.*

We are persuaded that the highly relevant evidence of the circumstances regarding the murder of Currier outweighed any potential prejudicial effect. Accordingly, we conclude that its admission was not so fundamentally unfair as to violate the Due Process Clause.

### 2. Double Jeopardy

■ Paradis argues that the admission of evidence relating to Currier's murder violated his Fifth Amendment protections against double jeopardy because he had been previously acquitted of Currier's murder. Paradis asserts that the introduction of the evidence of Currier's murder, combined with certain remarks by the prosecutor in closing argument, transformed this case into a retrial of the Currier murder.

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the Fifth Amendment's guarantee against double jeopardy incorporated the collateral estoppel doctrine; thus barring the state from relitigating issues that had already been litigated before a jury. In *Ashe*, the defendant was retried for robbery after a previous jury had acquitted him on the determination that he was not one of the robbers. *Id.* at 445, 90 S.Ct. at 1195. The Supreme Court found that under the circumstances of that case, the second jury had to reach a directly contrary conclusion in order to convict the defendant. *Id.* The Court stated that the Fifth Amendment guarantee against double jeopardy "protects a man who has been acquitted from having to 'run the

gantlet' a second time." *Id.* at 446, 90 S.Ct. at 1195, quoting *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1969).

In *Dowling,* 493 U.S. 342, 110 S.Ct. 668, the Supreme Court declined to interpret the Double Jeopardy Clause as excluding relevant evidence simply because it related to criminal conduct for which the defendant had been acquitted. *Id.* at 348, 110 S.Ct. at 672. The Court found that the protection of the Double Jeopardy Clause does not apply where the prior acquittal does not determine an ultimate issue in the case. *Id.*

The record demonstrates that the Fifth Amendment's guarantee against double jeopardy was not implicated in this matter. The jurors were informed that Paradis had been acquitted of Currier's murder. The prosecutor argued that the evidence showed that Currier was killed in Paradis' residence. Therefore, Paradis had a motive to cover-up that killing by murdering Palmer. The jurors did not have to determine that Paradis killed Currier to find Paradis guilty of murdering Palmer.

### D. *Ineffective Assistance of Counsel*

■■■ Paradis contends that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments. We review de novo the question whether a defendant received ineffective assistance of counsel. *United States v. Swanson,* 943 F.2d 1070, 1072 (9th Cir. 1991). Paradis contends that his representation by William Brown was deficient for the following reasons: (1) Brown was inexperienced; (2) Brown's trial tactics were poorly conceived; (3) Brown ineffectively conducted the jury voir dire; (4) Brown did not conduct an adequate investigation before trial; and (5) Brown conducted the defense ineptly during trial.

The "benchmark" of any claim that the Sixth Amendment right to counsel has been violated is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668,

686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In *Smith v. Ylst,* 826 F.2d 872 (9th Cir.1987), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988), we held:

> It is well settled that for a defendant to prevail on a claim of ineffective assistance of counsel, he ordinarily must show (1) specific acts and omissions of counsel that fall below a standard of professional reasonableness, and (2) that these acts "prejudiced" the defendant because there "is a reasonable probability that absent the errors the factfinder would have had a reasonable doubt respecting guilt."

*Id.* at 875 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). This standard is "rigorous" and "highly demanding." *Kimmelman v. Morrison,* 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). The defendant must overcome a "strong presumption that a lawyer is competent." *Smith,* 826 F.2d at 875. The Supreme Court articulated the policy behind this demanding standard in *Strickland:*

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted).

■■■ Paradis contends that Brown was too inexperienced to provide Paradis with effective assistance because he had passed the bar examination just six months prior to his appointment as Paradis' counsel, he had not taken any classes in criminal law, criminal procedure or trial advocacy during law school, and he had never tried a jury or felony trial.

The evidence demonstrates that Brown was not completely inexperienced in criminal matters. Brown had been a police officer for many years before he attended law school. Brown had an extensive background in law enforcement investigations and the court system. The record also shows that Brown had previously tried some misdemeanor cases for the prosecutor's office.

The Idaho Supreme Court and the district court found that counsel's efforts were of the "highest quality" and "exemplary." *See Paradis v. State*, 110 Idaho 534, 716 P.2d 1306, 1316 (1986); *Paradis*, 667 F.Supp. at 1388. Paradis has failed to demonstrate that his trial counsel's performance was ineffective because of his inexperience.

Paradis asserts that Brown's trial strategy was poorly conceived. Paradis focuses on Brown's presentation of an alibi defense. The record shows that the alibi defense was suggested to Brown by Paradis. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Paradis has failed to rebut the presumption that "the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

██ The record does not support Paradis' contention that Brown's voir dire of the jury was ineffective. Paradis asserts that Brown failed to question the jurors adequately regarding any preconceived notions they might have of Paradis' guilt. In addition, Paradis contends that Brown should have questioned the jurors regarding their ability to acquit based on Paradis' jurisdictional defense. Finally, Paradis argues that Brown should have challenged a juror who was a member of a church in which one of the prosecuting attorneys was a bishop.

Paradis relies on the testimony of Klaus Weibe, an attorney, to prove that Brown's actions on voir dire were ineffective. Weibe, however, was not present to observe the demeanor of the jurors when they responded to questioning. In addition, by his own admission, Weibe only reviewed the voir dire of the fourteen jurors that were impaneled and decided the case. Paradis has not demonstrated that Brown's conduct of the voir dire of the jury affected the outcome of the trial.

Paradis argues that Brown should have investigated several items of evidence in more detail, including the condition of Palmer's jeans and the sleeping bag found near the overturned van. Brown testified that he decided not to investigate these items because he did not want to put forth any evidence that might suggest that Palmer was sexually assaulted and inflame the jury against Paradis. Paradis has failed to overcome the presumption that counsel's strategy was sound.

Paradis also complains that Brown made no attempt to obtain the testimony of an FBI agent who had conducted tests on soil samples found on Palmer's shoes. This argument is not supported by the record. Brown testified at the evidentiary hearing that he attempted to have the FBI agent present, but the state court denied the request on the ground that it was too expensive to fly the agent from Washington, D.C. to testify in person.

Paradis further alleges that Brown should have accepted the offer of help from Roger Peven, Paradis's trial counsel during the Currier trial in Washington. Brown testified at the evidentiary hearing that he did not seek Peven's assistance because he felt the offer was not serious. Paradis argues that Brown should have at least examined Peven's files. However, there is no evidence in the record that there was anything in Peven's files that Brown did not have or that would have affected the outcome of the trial.

Paradis claims that Brown made no effort to obtain evidence from the state authorities in Washington. The record shows, however, that Brown made a request to the Idaho authorities for exculpatory evidence. Paradis has not shown that any evidence from the state of Washington

was withheld from the Idaho authorities. Thus, Paradis has not demonstrated that anything exculpatory would have been revealed had Brown requested the materials directly from Washington officers.

Paradis asserts that Brown failed to prepare Dr. Larson adequately for trial. We disagree. The record shows that Brown lead Dr. Larson through a point-by-point rebuttal of Dr. Brady's testimony.

Paradis argues that Brown failed to ask for the trial transcript of a potential witness, Roseanne Moline, and did not attempt to locate either Moline or Cindy Simera, Gibson's wife. Both Moline and Simera were allegedly at Paradis's house on the night of the murders. Brown testified that he could not afford to look for Moline. He also pointed out that the FBI, as well as the Washington and Idaho police, were looking for Moline. Brown also testified that he had unsuccessfully tried to contact Simera. The record shows that Brown located Moline and presented her testimony in the motion for a new trial proceedings.

Paradis also contends that Brown erred in failing to depose or question Dr. Brady prior to the trial. Paradis has not demonstrated that the failure to question Dr. Brady prior to trial affected the outcome of the trial. As noted above, the record shows that Brown presented an excellent rebuttal to Dr. Brady's testimony. *See Paradis*, 667 F.Supp. at 1388 (The rebuttal testimony of the defense's medical expert "provided a clear and cogent view of the evidence in this case and culminated in an opinion which, if adopted by the jury, could well have led to a verdict of not guilty.").

Paradis argues further that Brown was ineffective at trial. Paradis's complaints are based on attorney Weibe's hindsight opinions on how he would have tried the case. Brown's decisions during trial are presumed to be based on sound lawyering skills and strategy. *Kimmelman*, 477 U.S. at 381, 106 S.Ct. at 2586. Brown testified that he did not focus on issues concerning the labial tear to avoid raising an inference that Palmer had been raped before she was murdered. Brown also explained that he did not attempt to introduce Moline's state-

ments under the unavailable declarant hearsay exception because that rule was not available in Idaho at the time of the trial. Paradis has not demonstrated that his counsel's representation during the trial was ineffective.

### E. *Procedural Default: Prosecutorial Misconduct and Improper Venue Claims*

Paradis contends that the misconduct of the prosecutor and the trial court's refusal to grant a change of venue deprived him of a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments. We are precluded from reviewing these claims because the Idaho Supreme Court refused to consider them on an independent state ground.

In *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court reiterated the principle that a district court should not review an alleged violation of federal law if the state court's decision rests on an independent state ground. 111 S.Ct. at 2565. The court explained the rule applicable to state prisoner habeas petitions as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id.*

Before a state procedural default can bar consideration of a federal claim, the last state court rendering a judgment must " 'clearly and expressly' state that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1988) (citations omitted). In *Paradis*, 716 P.2d 1306, the Idaho Supreme Court explicitly refused to review Paradis' claims of prosecutorial misconduct and improper venue "because of the rule in Idaho that issues which could have and

should have been raised on direct appeal will not be allowed to be raised in a post-conviction proceeding." *Id.* at 1317. Because the Idaho Supreme Court clearly rested its decision to refuse to consider Paradis' federal constitutional claims on independent state grounds, we cannot review their merits.

### 1. Adequacy of the Procedural Default.

▇ Paradis argues that Idaho has not consistently applied the procedural rule which requires that claims considered in post-conviction proceedings must have been raised on direct appeal. In order to be adequate as a procedural bar to federal habeas corpus proceedings, the independent state grounds must be regularly and consistently applied. *Dugger v. Adams*, 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988).

▇ Paradis relies on Judge Burnett's concurring opinion in *State v. Darbin*, 109 Idaho 516, 708 P.2d 921 (App.1985) to support his claim. There, Judge Burnett noted that the Idaho courts had inconsistently applied the rule that res judicata precluded issues decided on direct appeal from being raised again in post-conviction hearings. However, in refusing to hear Paradis' prosecutorial misconduct and venue claims, the Idaho Supreme Court did not rely on the rule criticized by Judge Burnett. Instead, citing *Watkins v. State*, 101 Idaho 758, 620 P.2d 792, 793–94 (1980), it denied his claims based on the principle that "issues which could have and should have been raised on direct appeal will not be allowed to be raised in a post-conviction proceeding," *Paradis*, 716 P.2d at 1317. No showing has been made that the procedural rule set forth in *Watkins* has been irregularly applied by the Idaho courts. Paradis has failed to demonstrate that the independent state ground relied upon by the Idaho Supreme Court in rejecting Paradis' federal constitutional claims has been inconsistently applied.

▇ Paradis argues further that the Idaho Supreme Court misapplied Idaho law in holding that the state had not waived the "affirmative defense" of procedural default by failing to raise this defense prior to oral argument. We cannot consider the merits of this contention because federal courts lack the jurisdiction in state prisoner habeas corpus proceedings to determine whether state law was properly applied. *Estelle v. McGuire*, —— U.S. ——, ——, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).

### 2. Cause for the Procedural Default.

▇ Because of the valid state procedural bar, we may not consider the merits of Paradis' claims of prosecutorial misconduct and improper venue unless Paradis can "demonstrate cause for the default and actual prejudice." *Coleman*, 111 S.Ct. at 2565. Paradis contends that the procedural default should be excused because he received ineffective assistance of counsel on appeal. In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court explained the standard for determining whether counsel's performance on appeal can excuse a state procedural default:

> [T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

*Id.* 477 U.S. at 488, 106 S.Ct. at 2645.

Paradis does not contend that an external factor prohibited his counsel from raising the prosecutorial misconduct and improper venue claims in state court. He must, therefore, show that Brown's failure

to raise the prosecutorial misconduct and improper venue issues on appeal constituted ineffective assistance under the *Strickland* standard.

Paradis' claim that his procedural default should be excused because his counsel failed to object to prosecutorial misconduct at trial and failed to raise the issue on appeal lacks merit. Paradis must demonstrate that his counsel's failure to respond to the following alleged prosecutorial misconduct comprised constitutionally ineffective assistance of counsel: (1) the prosecutor's statement in closing argument which implied that Paradis killed Currier, (2) the prosecutor's statement in closing argument that Paradis could not be retried for Palmer's murder and "no other jury ... can do your job now," (3) the prosecutor's statement that Paradis "frolicked all night" with alibi witness Aera Beaver, and (4) the prosecutor's "lengthy and personal attack" on Beaver.

We reject Paradis' contention that his counsel's failure to respond to the prosecutor's statement during closing argument which implied that Paradis killed Currier established constitutionally ineffective assistance of counsel. The jury was explicitly informed that Paradis had been found not guilty of the murder of Currier. Throughout the entire trial, Paradis' counsel objected to the introduction of all evidence relating to Currier's murder. *Paradis*, 667 F.Supp. at 1385.

Paradis also contends that the prosecutor's statement during closing argument that no other jury could try him for the murder of Palmer encouraged the jurors to convict Paradis regardless of whether the state had carried its burden of proving Palmer was killed in Idaho. Paradis has failed to present any evidence to support this speculation. The question whether Palmer was murdered in Idaho was hotly contested before the jury. *Paradis*, 667 F.Supp. at 1373. Moreover, the jurors were instructed to acquit Paradis if they found the murder did not occur in Idaho. *Id.* In light of these circumstances, Paradis has failed to rebut the presumption that Brown's failure to object to the prosecu-

tor's statements made in closing argument "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, (quoting *Michel*, 350 U.S. at 101, 76 S.Ct. at 164).

The prosecutor's statement that Paradis "frolicked all night" with Beaver was based on Beaver's testimony that Paradis spent the night with her. We agree with the district court that the state prosecutor did go "overboard" in attacking Beaver's credibility. 667 F.Supp. at 1372. The record shows, however, that the prosecutor backed away from that attack by stating that he had perhaps been too harsh on Beaver, and that the jurors were to be the sole judges of Beaver's credibility. In light of the prosecutor's retreat, Paradis has failed to demonstrate that Brown's failure to object was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

The failure of Paradis' counsel to raise the proper venue issue on appeal did not constitute ineffective assistance of counsel. Brown testified at the evidentiary hearing that he chose not to challenge the trial court's denial of his change of venue motion because he considered that argument weak, and he wanted to focus on better arguments in the appeal. *Paradis*, 667 F.Supp. at 1370. Paradis's counsel was well within the bounds of professional conduct in abandoning the venue argument and focusing on stronger issues. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983).

We conclude that neither Brown's failure to object to alleged acts of prosecutorial misconduct nor his failure to raise the venue issue constituted ineffective assistance of counsel. Accordingly, the procedural default in state court precludes our review of the merits of these issues.

## II.

### *Death Sentence*

The state trial court sentenced Paradis to death based solely on its finding that Paradis demonstrated "utter disregard for human life" within the meaning of Idaho Code § 19–2515(g)(6). In *Creech v. Arave*, 947 F.2d 873 (9th Cir.1991), we held the statutory aggravating circumstance listed in section 19–2515(g)(6) to be unconstitutionally vague. *Id.* at 882–85. We found that "the utter disregard for human life" aggravating circumstance did not permit "the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *Id.* at 883, (quoting *Lewis v. Jeffers,* — U.S. —, 110 S.Ct. 3092, 3099, 111 L.Ed.2d 606 (1990)). Since the sole statutory factor relied on by the trial court in imposing the death sentence is unconstitutional, the death sentence cannot stand.

We AFFIRM the denial of habeas corpus relief with respect to the guilt phase of Paradis' state trial. We REVERSE the denial of petitioner's habeas corpus petition with respect to the sentencing phase of Paradis' state trial. Accordingly, we direct the district court to grant the habeas corpus petition on Paradis' claim that the state trial court relied on an improper aggravating circumstance in imposing the penalty of death. The district court shall issue a writ requiring Paradis' release unless, within a reasonable time set by the district court, the Idaho court resentences Paradis.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.