Orrin W. **PAYNE**, Petitioner–Appellee, Cross–Appellant,

v.

Robert **BORG**, Warden, Respondent–Appellant, Cross–Appellee.

Nos. 91–15678, 91–15867.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1992.

Memorandum Filed Oct. 2, 1992.

Order and Opinion Filed Dec. 10, 1992.

As Amended on Denial of Rehearing and Rehearing En Banc March 3, 1993.

Thomas A. Brady, Deputy Atty. Gen., San Francisco, CA, for respondent-appellant.

Quin Denvir, Sacramento, CA, for petitioner-appellee.

Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.

## ORDER AND OPINION

### ORDER

The memorandum disposition filed October 2, 1992, is redesignated a published and authored opinion and amended in its entirety.

### OPINION

KLEINFELD, Circuit Judge:

Petitioner Orrin W. Payne was found guilty in state court of first degree murder and of a special circumstance that the murder was committed during the course of a burglary. Payne filed this petition for a writ of habeas corpus, contesting only the validity of the special circumstance finding, which resulted in a sentence of life imprisonment without the possibility of parole. The district court granted habeas relief. The state appeals its finding that there was insufficient evidence to prove, beyond a reasonable doubt, that Payne had the necessary intent to support his special circumstance conviction. Payne cross-appeals the district court's denial of his two other due process claims: (a) that the state trial judge failed to make a sufficient finding on the intent issue; and (b) that the state

appellate court acted improperly in presuming the trial judge found the requisite intent. We affirm in part and reverse in part, with the effect that the state judgment stands.

## BACKGROUND

### I. *Facts*

The parties substantially agree on the facts of the case, but differ as to what inferences may be reasonably drawn from them. Only one witness testified,[1] Michael Hynan, the victim's husband. On December 7, 1982, at approximately 7:45 p.m., he returned from work to his home in San Jose. Mr. Hynan shared his home with his wife, Kathline, and their two young daughters. As he got out of his car, he noticed two identical red ten speed bicycles hidden on his property behind a bushy yucca plant. He also noticed that a gate was ajar. From the outside of the house, he could see that his daughter was in the family room watching television and his wife was in the kitchen on the telephone. Mr. Hynan pounded loudly and repeatedly on the sliding glass door that led to the family room. His daughter heard him over the television and tried to unlock the glass door but could not. Then Mrs. Hynan left the telephone for a moment and unlocked the glass door to allow her husband to enter. He told her to call the police because "somebody's in the backyard."

While Mrs. Hynan called the police, Mr. Hynan went to the master bedroom to get his pellet pistol from the closet. As he turned around from the closet, Payne, a larger man, grabbed his right hand and put his forearm against Mr. Hynan's neck. When Mr. Hynan yelled for help, Payne put his forearm around his neck and stated in an urgent, low, commanding tone, "Shut up or I'll blow your fucking head off." Mr.

Hynan dropped his pellet pistol, and Payne spun him around and pushed him into the living room, where Payne told Mr. Hynan to get on the floor face down and pushed him down.

Mr. Hynan sensed that Payne remained near him, and saw and heard nothing to indicate that Payne was moving away. Meanwhile, Mr. Hynan saw codefendant Henry Williams enter the house, dressed, like Payne, in a hooded sweatshirt with the hood tied securely around his head. Williams immediately turned right into the family room and yelled in a hurried, frightened tone, to Mrs. Hynan, "Put the fucking phone down." Mrs. Hynan said "Please don't shoot me." Williams immediately shot her twice, killing her.

Williams then hurried over to Mr. Hynan, put his foot on Mr. Hynan's head and demanded his money. Without changing position, Mr. Hynan reached into his pants pocket, pulled out $17.00 and threw it on the floor. Mr. Hynan saw a hand pick up the money and felt his checkbook and wallet removed from his back pocket. He then saw both men leave through the sliding glass door leading to the rear patio. During this entire time, Williams and Payne never spoke to each other. Mr. Hynan immediately went to his wife's side. Kathline Hynan, pregnant with the couple's third child, was already dead.

### II. *State Court Proceedings*

Payne was found guilty of first degree murder under California's felony murder statute. *See* Cal.Penal Code § 189. The trial judge found that the third alleged special circumstance, that the murder was committed during the course of a burglary, was true, resulting in a sentence of life imprisonment without the possibility of parole under Penal Code section 190.-2(a)(17)(vii).[2] The court further found that

---

**1.** Mr. Hynan testified at a preliminary hearing. The defendant waived jury trial and stipulated to submit the case to the court on the basis of the preliminary hearing transcript and certain exhibits.

**2.** On the date of the offense, section 190.-2(a)(17)(vii) provided: 1(a)

The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without possibility of parole in any case in which one or more of the following special

Payne "intentionally aided and abetted in the commission of murder in the first degree in that he intentionally and illegally restrained Michael Hynan by force and fear as Henry Lee Williams accomplished the first degree murder." The defendant moved to modify the verdict by striking the special circumstance, based upon sufficiency of the evidence. The defense argument was that the evidence did not show that Payne acted with the intention of assisting Williams to kill Mrs. Hynan. The state trial judge considered this argument, reconsidered the evidence, and reaffirmed the finding.

The judgment of the superior court was affirmed by a divided California Court of Appeal. The California Supreme Court granted Payne's petition for review and ordered reconsideration in light of two subsequent decisions. On reconsideration the Court of Appeal affirmed again, and this time the Supreme Court denied review.

### III. *Federal Court Proceedings*

On April 3, 1991, the district court issued an order and a judgment granting Payne's petition for writ of habeas corpus, filed under 28 U.S.C. § 2254. The court ruled that the evidence was constitutionally insufficient to support the special circumstance finding.

The state filed a timely notice of appeal, and Payne filed a timely cross-appeal on two alternative claims denied by the district court.

### STANDARD OF REVIEW

■■■ The relevant standards of review are critical to the outcome of this case. We review a district court's grant or denial of habeas corpus de novo. *Norris v. Risley,* 878 F.2d 1178, 1180 (9th Cir.1989). A federal tribunal does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The state tribunal's authority as finder of fact is preserved by considering all the evidence in the light most favorable to the prosecution. *Id.* If no rational trier of fact could have found proof of guilt beyond a reasonable doubt, then the writ is granted. *Id.* at 324, 99 S.Ct. at 2791–92. But if the historical facts would support conflicting inferences, the federal court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. at 2793. *Paradis v. Arave,* 954 F.2d 1483, 1486 (9th Cir.1992).

The *Jackson* review is *de novo* in the sense that we perform it ourselves, instead of reviewing only to determine whether the state court reasonably applied *Jackson,* or whether petitioner had a full and fair opportunity to litigate sufficiency of the evidence in state court. But *Jackson de novo* review is not the same as *de novo* review of facts. *Jackson* does not permit us or the district court to grant the writ because

---

circumstances has been charged and specially found ... to be true:

> (17) The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after com-

mitting or attempting to commit the following felonies:

> (vii) Burglary in the first or second degree in violation of Section 460.

Cal.Penal Code § 190.2(a)(17)(vii).

we are not sure that Payne intended to aid in the killing. We are required to deny the writ, even if we ourselves might not be persuaded beyond a reasonable doubt, if *any* rational trier of fact could have been so persuaded, considering all the evidence in a light most favorable to the prosecution and deferring to the trier of fact's presumed resolution of conflicting inferences most favorably to the prosecution. *Jackson*, 443 U.S. at 319, 326, 99 S.Ct. at 2789, 2792–93; *Wright v. West*, — U.S. —, 112 S.Ct. 2482, 2492–93, 120 L.Ed.2d 225 (1992).

## DISCUSSION

### I. The State's Appeal

■ In *People v. Anderson*, 43 Cal.3d 1104, 240 Cal.Rptr. 585, 742 P.2d 1306 (1987), the California Supreme Court held that when a defendant is sentenced for first degree murder, intent to kill is not an element of felony murder special circumstance under section 190.2(a)(17) if the defendant was the gunman, but if the defendant was an aider and abetter, section 190.-2(b) requires that intent be proven. *Id.* 240 Cal.Rptr. at 611, 742 P.2d at 1332. The defendant must have acted with intent to aid in the killing, as opposed to merely intending to aid in the underlying felony. *Id.* 240 Cal.Rptr. at 609, 742 P.2d at 1330; *see also People v. Sanders*, 51 Cal.3d 471, 273 Cal.Rptr. 537, 562, 797 P.2d 561, 586 (1990), *cert. denied*, — U.S. —, 111 S.Ct. 2249, 114 L.Ed.2d 490 (1991). A person is guilty of aiding in the commission of a crime if he acts "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of the offense." *People v. Beeman*, 35 Cal.3d 547, 199 Cal.Rptr. 60, 67, 674 P.2d 1318, 1325 (1984).[3] The issue before this court is whether the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt, as required by the due process clause under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25

L.Ed.2d 368 (1970), that Payne intended to assist Williams in killing Mrs. Hynan.

■ Although we perform a *de novo* review of sufficiency of the evidence under the *Jackson* standard, the underlying "state court factual findings are entitled to a presumption of correctness." 28 U.S.C. § 2254(d); *Paradis*, 954 F.2d 1483 (9th Cir. 1992). The Supreme Court has also made clear that *"all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Moreover, "[c]ircumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred, and is not to be distinguished from testimonial evidence insofar as the jury's fact-finding function is concerned." *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir.1990).

### A. Actus Reus

Payne first argues that the evidence was insufficient to support the trial court's conclusion that he "intentionally and illegally restrained Michael Hynan by force and fear" while Williams committed the murder.

We view the exact location of Payne during the shooting to be unimportant; even if he briefly returned to the bedroom to steal Mr. Hynan's pellet pistol, he effectively restrained Mr. Hynan during the period in question by fear. Payne had attacked Mr. Hynan in his own bedroom and threatened to kill him if he did not do what he was told. Mr. Hynan had no reason to doubt that Payne was armed and would kill him, even though he had not seen a gun. When he was forced into the living room and directed, "On the floor face down," Mr. Hynan could reasonably assume that he would die if he did not obey. Payne prevented Mr. Hynan, by an imminent threat to his life, from assisting his wife by physical force or even by calling out a warning to her, as Williams entered the house and confronted her.

---

3. An illustration of how these principles apply in a case like this can be found in *People v. Hall*, 157 Cal.App.3d 538, 223 Cal.Rptr. 267 (1984). In *Hall*, the defendant was found guilty of first degree murder with the special circumstance that the killing occurred while defendant was engaged in the commission of a robbery and burglary. Evaluating the defendant's challenge to the jury instruction relating to section 190.-2(b), the court held that the intent requirement of that section was satisfied if the defendant "knew Clarke's killing was planned by one of the robbers and that in holding Clarke down while another beat him he was facilitating that killing." *Id.* 223 Cal.Rptr. at 271.

## B. Mens Rea

A closer question is Payne's intent to kill. The district court found that there was "insufficient evidence to support a finding, beyond a reasonable doubt, that [Payne] had an intent to kill Mrs. Hynan or to aid in her killing." The state court found that Payne "intentionally aided and abetted" first degree murder. The state judge's attention was directed to the precise issue before us, by Payne's motion to modify the verdict, based on the sufficiency of the evidence behind the court's special circumstance finding. In denying the motion, the court demonstrated awareness of the complexity of the issue and stated that it had reviewed the evidence again and reached the same conclusion:

> To be quite frank with you, the issue is a complex one in my mind. I am sure the issue will be one which will have a long legal history and in my view, the issue as to what is required for the special circumstance finding perhaps will be resolved by courts of much higher posture than this one. For whatever it's worth, in my view, I have reviewed the evidence in my own mind again and I believe the evidence is sufficient for the finding.

Payne argues from several facts which could have given rise to a reasonable doubt or a determination of absence of the special circumstance. Williams did not say that he was about to kill Mrs. Hynan, and Payne did not tell him to kill her. Williams shot her immediately after telling her to put the phone down, so there was only a moment when Payne could have interceded. There was no direct evidence of a plan to kill.

The facts allow for rational inferences that Payne intended to kill someone when he and Williams entered the house, and intended to assure that Williams could kill Mrs. Hynan without interference from her husband. The matched, hidden bicycles and matched way of wearing their sweatshirt hoods tied tightly around their heads could give rise to an inference of planning. Since the burglary took place at a time when people are likely to be home and awake, and the burglars could see as well as Mr. Hynan that Mrs. Hynan was on the telephone and the Hynans' daughter was watching television, a rational inference might be that Payne and Williams went forward with this burglary intending to kill someone.

If they had only wanted to steal, the burglars would more likely have picked a house where no one was home, or at least the residents were asleep. Entry into the Hynan house made it likely that they would have a violent encounter with the occupants. The burglars would have heard Mr. Hynan pound on the glass door and tell his wife to call the police, so a rational inference could be that they knew they might have to kill someone to complete the crime and proceeded with that intention. Payne entered first while Williams stayed outside, so a trier of fact could infer that Payne was the leader. Payne talked softly to Mr. Hynan and told him to "shut up," allowing for the inference that he planned for the confrontation between Williams and Mrs. Hynan and sought to avoid warning her. Williams entered as if on cue or pursuant to plan immediately after the husband was subdued, so a trier of fact could rationally infer that Payne and Williams planned for Williams to come in and kill Mrs. Hynan, and put the husband on the floor to keep him out of the way.

The command, enforced by an imminent threat of death, to Mr. Hynan to "shut up" could give rise to an inference that Payne sought to prevent Mr. Hynan from giving a warning that might enable Mrs. Hynan to do anything about Williams' attack. Once Mr. Hynan's pellet gun was dropped, Mrs. Hynan was the only serious threat to the criminals, because she was calling the police, as Payne would have known from Mr. Hynan's words to her, so a rational trier of fact could infer that the two criminals would focus their efforts upon eliminating this threat by killing her before she could complete the call. Though at the moment before the murder, Payne might have had no time to do more than shout "No!" to Williams, such action might have had some effect, and a rational trier of fact could infer that Payne did not call out because he wanted to facilitate the murder rather than interfere with it. A rational trier of fact could have inferred from Payne's silence after Williams killed Mrs. Hynan and took

the $17 and checkbook from Mr. Hynan, that Payne had anticipated, planned for, and intended the murder.

The absence of communication between the criminals while they were inside the house could mean that they had no need to talk, because they had planned everything including the shooting. The negligible amount stolen, and that from someone who was not even present when they hid the bicycles preparatory to going in, could mean that the stealing was just for appearances, and that the purpose of the entry by the two criminals was to kill someone.

Inferences to the contrary would also be rational. Payne might not have intended to kill, just bluff. He might not have known Williams had a gun. He might not have known Williams would really use it. He might have assumed that a pregnant woman would obey a stranger with a gun, so it would not be necessary to shoot her. He might have been afraid of Williams, so that he would go forward with the burglary and not say anything which might upset his murderous associate. But we are not entitled, on federal habeas review of a state conviction, to indulge these inferences, if a rational trier of fact could have drawn inferences supporting the conviction. *Jackson* commands that we defer to the rational inferences of the state tribunal regarding Payne's intent.

The dissent takes the position that the inferences which would support the state court's view are too speculative to satisfy the standard of proof beyond a reasonable doubt. We evaluated the record as a whole to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. While we agree with the dissent that this determination "must rest on inferences," we think that the inferences have sufficient persuasive force to support a determination beyond a reasonable doubt that Payne intended to help Williams kill Mrs. Hynan. Direct, as opposed to circumstan-

tial evidence, might typically be testimony of the other murderer, perhaps in exchange for some sentencing benefit, that they had discussed and planned the killing. But would the word of a murderer in exchange for sentencing considerations be more persuasive than inferences from circumstances? One might reasonably draw inferences with more confidence from the circumstances of the murder, than from the word of the murderer. A rational trier of fact could have inferred an intent to aid in the killing from the circumstances. A rational trier of fact could prefer the incriminating explanation for Payne's conduct over explanations which would be inconsistent with an intent to aid in the killing. *Cf. United States v. Bishop*, 959 F.2d 820, 830–31 (9th Cir.1992). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.1986).

We have no quarrel with the general proposition urged by the dissent, that the probability of a conclusion diminishes as the number of intermediate weak inferences in the argument increases. We have put the matter in terms of what rational inferences could be drawn, rather than whether we are sure Payne intended to help kill Kathline Hynan, because *Jackson* allows us to determine only whether any rational trier of fact could have found intent beyond a reasonable doubt, not whether we would. Payne was convicted in state court, not federal court, and our role is limited to assuring that the California courts obeyed the Constitution.

We merely state the inferences which a rational trier of fact might have drawn from the circumstances, instead of declaring that we would draw those inferences, because *Jackson* limits our review to whether "any" rational trier of fact could draw the inferences supporting the conviction beyond a reasonable doubt. Our delicacy in this formulation does not imply that they are weak or speculative. It is hard to think of a persuasive explanation of

Payne's entry into the house in the circumstances consistent with any intention except violent confrontation with the Hynans. If that was his intention, then the details of his attack on Mr. Hynan tend to show that he intended to help Williams kill Mrs. Hynan.

## II. *Petitioner's Cross–Appeal*

### A. The Trial Court's Finding of Intent

 Payne argues that the state trial court failed to comply with *People v. Beeman*, 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984), by failing to find that he had the requisite intent to kill. In announcing his verdict on the special circumstance allegation, the trial judge stated:

> As to the third special circumstance alleged by the People, the court makes its finding that said special circumstance is true.

> The court further finds that the defendant intentionally aided and abetted in the commission of murder in the first degree in that he intentionally and illegally restrained Michael Hynan by force and fear as Henry Lee Williams accomplished the first degree murder.

Payne argues that the trial judge only found that he intentionally restrained Michael Hynan, not that he intended to aid in the killing of Kathline Hynan.

Considered in the context which gave rise to them, the judge's words do not allow for this inference. The question, whether Payne intended to help Williams kill Mrs. Hynan, was put to the judge as the main issue in the case. The information specifically alleged that Payne intentionally aided and abetted first degree murder. Payne argued in his trial brief that he could not be found guilty of the special circumstance unless the court concluded that he intended to kill. During closing arguments, defense counsel pointed out that the court was required to find an intent to kill. The trial court concluded on the record that Payne "intentionally aided and abetted in the commission of murder in the first degree." The defense moved to modify the verdict, arguing the sufficiency of the evidence with regard to the special circumstance finding. The trial court again found the evidence sufficient, in the language quoted above. Regardless of how his words might be interpreted were

there no context, it is plain under the circumstances that the state trial judge, after careful consideration, and again after plenary reconsideration, decided that Payne intended to aid in the killing.

### B. The Appellate Court's Presumption Regarding Intent

 Payne further argues that the judgment of the California courts should be reversed because the state appellate court used a "constitutionally invalid presumption" in deciding his appeal. In rejecting Payne's *Beeman* argument, the California Court of Appeal stated: "we presume that the trial court knew the weight of authority upon which the *Beeman* holding was based and followed it." Payne argues that this "conclusive presumption" was unsupported in fact or law, denying him due process.

Payne mischaracterizes the court of appeal's statement. The court did not presume that the trial judge knew and followed *Beeman*, which was decided after Payne's conviction, but rather that the judge knew "the weight of authority upon which the *Beeman* holding was based." Payne also takes the statement out of context, ignoring the court's previous conclusion that the trial court's finding

> was the unambiguous equivalent of a finding that [Payne] intended to aid in the killing, as required by *Carlos*, and also by the subsequent decision in [*Beeman*], defining the elements of aiding and abetting. In other words, the court found not only that [Payne] intentionally aided in the burglary, but also that when he restrained Mr. Hynan, he did so with the intent of aiding Williams in the killing of the victim.

"[A] federal court on habeas review must give deference to a state appellate court's resolution of an ambiguity in a state trial court statement." *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 739, 112 L.Ed.2d 812, 825 (1991); *accord Wainwright v. Goode*, 464 U.S. 78, 83–85, 104 S.Ct. 378, 381–82, 78 L.Ed.2d 187 (1983). In context, the California Court of Appeal's "presumption" is no more than the unremarkable statement that the trial judge was presumed to have known the relevant law of California when he made his decision.

## CONCLUSION

Sufficient evidence supported the state trial court's conclusion that Payne intended to help Williams kill Kathline Hynan, and restrained Michael Hynan in order to accomplish that objective. The trial court made a sufficient finding of specific intent as required by the California Supreme Court in *People v. Beeman,* 674 P.2d 1318, 1325 (Cal.1984).

The district court judgment is AFFIRMED with regard to Payne's appeal, and REVERSED with regard to the State's appeal, and the matter is remanded for an order denying the petition for a writ of habeas corpus.

**CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting.**

The panel correctly states that "the determination of factual issues by the state court, with a few specific exceptions, is 'presumed to be correct.'" Opinion at 339 (quoting 28 U.S.C. § 2254(d)). One of those specific exceptions, however, is when a federal court concludes that the record does not fairly support a factual determination made by the state court. 28 U.S.C. § 2254(d)(8) (1988). Such is the case here: Judge Ware expressly found, pursuant to section 2254(d)(8), that the state court record did not support a factual determination that Payne intended to aid in the killing that occurred. *Payne v. Borg,* No. C 89–20395, at 8–12 (N.D.Cal. April 3, 1991) (order granting habeas corpus). Thus, undue deference to the state determination is inappropriate and inadequate to enforce the mandate of *Jackson v. Virginia.*

I agree with the majority that the evidence is sufficient to support a finding, beyond a reasonable doubt, that Payne restrained Mr. Hynan. I cannot agree, however, that the evidence establishes beyond a reasonable doubt that Payne restrained Mr. Hynan *knowing* Williams was going to kill Mrs. Hynan and *intending* to help him accomplish that purpose. *See* Opinion at 338–39. Although we must view the evidence in the light most favorable to the

prosecution, and hence draw inferences accordingly, this Court must also determine whether any rational factfinder could find the fact at issue beyond a reasonable doubt. *Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89.

Any finding on the factual issue of Payne's intent must rest solely on inferences. In part, this requires analysis of whether any supporting inferences could rationally be drawn, which the majority has done. The further analysis required, however, is whether the inferences that could be drawn to support such a conclusion establish it beyond a reasonable doubt. The majority identifies numerous inferences a rational factfinder could draw to support a finding that Payne intended to kill Mrs. Hynan, but points out that numerous "[i]nferences to the contrary would also be rational." The inferences the majority draws—not to mention the conclusion they purportedly support—are so weak as to amount to speculation and conjecture, not evidence.

The majority's conclusion boils down to this: evidence from which one can infer that two people planned a burglary, plus evidence that they knew people were likely to be at home during the burglary, is proof beyond a reasonable doubt that both burglary participants intended to kill anyone who was killed during the crime. This is precisely the result the California Supreme Court rejected in *People v. Anderson* when it held that intent to kill, and not merely intent to aid in the underlying felony, must be proven to convict a felony murderer's accomplice of first degree murder. *See* Opinion at 339.

My disagreement with the majority does not center on its reliance on circumstantial evidence, as opposed to direct evidence. Rather, it results from its interpretation of that evidence given the paucity of the evidence of intent and the presence of evidence to the contrary. To reach its conclusion the majority draws one inference from the evidence and the next inference not from the evidence but from the preceding scantily supported inference and so on,

344

each weaker than the first. This creates a chain of inferences in which the final inference of intent is so attenuated from the evidence that no rational juror could fairly hold it without a reasonable doubt in the presence of equally strong inferences to the contrary.

I conclude that if the inferences refuting intent are not equally as strong as those supporting it, they are not so disproportionate in strength that a rational trier of fact could conclude *beyond a reasonable doubt* that Payne intended for Williams to murder Mrs. Hynan during the burglary. Accordingly, I find the evidence insufficient to support the finding of special circumstance, and I would affirm the district court's conclusion in this respect. I therefore dissent from part I.B. of the majority's opinion.