**Donald M. PARADIS, Petitioner–Appellant,**

**v.**

**A.J. ARAVE, Warden, Idaho State Penitentiary; Al Murphy, Director, Idaho State Correctional Institution, Respondents–Appellees.**

No. 87–4100.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 19, 1994.

Decided March 23, 1994.

---

Edwin S. Matthews, Jr., Coudert Brothers, New York City, William L. Mauk, Skinner, Fawcett & Mauk, Boise, ID, for petitioner-appellant.

·Lynn E. Thomas, Deputy Atty. Gen., Boise, ID, for respondents-appellees.

Before: ALARCON and BEEZER, Circuit Judges, and NIELSEN *, District Judge.

ALARCON, Circuit Judge:

On June 22, 1980, the bodies of Scott Currier and Kimberly Palmer were found in a forest in Idaho. Petitioner Donald Paradis and Thomas Gibson were tried jointly and acquitted of Currier's murder in September 1980. Paradis and Gibson were tried separately in Idaho for the murder of Palmer. Both were convicted after trial by jury and sentenced to death by Judge Gary Haman, who found that they had acted with "utter disregard for human life."

Paradis' judgment of conviction and the sentence of death were affirmed by the Supreme Court of Idaho. *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984). Thereafter, Paradis' petition for state post-conviction relief was denied. *Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986). Paradis subsequently filed a petition for a writ of habeas corpus in the United States District Court for the District of Idaho, challenging the judgment of conviction and the sentence on federal constitutional grounds. After an evidentiary hearing, the district court denied the petition. *Paradis v. Arave,* 667 F.Supp. 1361 (D.Idaho 1987), *aff'd in part and rev'd in part,* 954 F.2d 1483 (9th Cir.1992), *vacated and remanded,* —— U.S. ——, 113 S.Ct. 1837, 123 L.Ed.2d 463 (1993).

Paradis appealed from the denial of his petition to this court. We deferred submission pending the determination of *Creech v. Arave,* 947 F.2d 873 (9th Cir.1991), *rev'd in part,* —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). During this period, we requested supplemental briefs addressing the applicability of recently decided Supreme

---

* Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

Court cases to the issues raised in Paradis' appeal. After submitting this matter for decision, we concluded that each of Paradis' constitutional claims with respect to the guilt phase of his trial lacked merit. *Paradis v. Arave*, 954 F.2d 1483, 1495 (9th Cir.1992), *vacated and remanded*, —— U.S. ——, 113 S.Ct. 1837, 123 L.Ed.2d 463 (1993). In *Creech v. Arave*, a separate panel of this court held that Idaho's "utter disregard for human life" aggravating factor was unconstitutionally vague. *Creech v. Arave*, 947 F.2d at 883. Relying on the law of the circuit as explained in *Creech v. Arave*, we reversed the district court's denial of habeas corpus relief regarding the constitutionality of the sentence of death. *Paradis v. Arave*, 954 F.2d at 1495. We affirmed the denial of his federal constitutional claims regarding the guilt phase of the state proceedings. *Id.* Because we reversed the district court's determination that there was no merit to Paradis' challenge to the constitutionality of the term "utter disregard for human life," we did not reach Paradis' other attacks on the validity of the sentence. *Id.*

The Supreme Court granted certiorari in *Creech v. Arave*, and in this matter. In *Arave v. Creech*, —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), the Court reversed the judgment of this court. The Court held that the statutory term "utter disregard for human life," as defined by the Idaho Supreme Court, was not unconstitutionally vague. *Id.* —— U.S. at ——, 113 S.Ct. at 1545. This matter was remanded by the Court for further consideration in light of its conclusion that that portion of Idaho's death penalty statute was constitutional. *Arave v. Paradis*, —— U.S. ——, 113 S.Ct. 1837, 123 L.Ed.2d 463 (1993).

We must now examine the federal constitutional claims raised by Paradis with regard to the sentence which we did not previously reach in our first opinion. Our review of the denial of a habeas corpus petition is *de novo*, independent of the district court's conclusions. *Adams v. Peterson*, 968 F.2d 835, 843 (9th Cir.1992) (en banc). We dismiss one claim because it was not raised in the district court. We conclude that the remaining con-

tentions lack merit and affirm the denial of the petition for habeas corpus relief.

## I.

In response to this court's request of June 7, 1993, for supplemental briefs on the applicability of *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), to the issues raised in Paradis' habeas corpus petition, appellees A.J. Arave and Al Murphy (Idaho) contend that these Supreme Court decisions bar Paradis' claims that (1) there is insufficient evidence to support a beyond a reasonable doubt finding that Paradis exhibited utter disregard for human life, (2) Paradis was denied his rights under the Confrontation Clause, and (3) Paradis was sentenced to death without a finding of sufficient culpability.

In *Teague*, the Supreme Court held that new federal constitutional decisions cannot generally be invoked by a state prisoner in a federal habeas corpus proceeding. *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075; *see also Butler*, 494 U.S. at 412, 110 S.Ct. at 1216; *Penry*, 492 U.S. at 313, 109 S.Ct. at 2493. In this case, the Supreme Court denied certiorari on July 5, 1984, following the affirmance of Paradis' judgment of conviction and sentence of death by the Idaho Supreme Court. *State v. Paradis*, 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984). Thus, Paradis may not seek application of any new federal constitutional rule announced by the Court after July 5, 1984.

None of the claims Idaho challenges as procedurally barred because of the new rule restriction was first recognized by the Court after July 5, 1984. The rational juror standard for the sufficiency of the evidence was set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The due process requirement that a defendant be advised of all materials to be used against him in sentencing was announced in *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). The Eighth Amendment rule requiring proportionate cul-

pability for imposing a death sentence was enunciated in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Therefore, the merits of Paradis' claims can be reviewed in a petition pursuant to 28 U.S.C. § 2254 because none are based upon on a new constitutional rule.

## II.

In our August 9, 1990, order requesting supplemental briefing, we directed the parties to discuss the applicability, if any, of the Court's decision in *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), to the issues raised in Paradis' appeal. In reviewing the sufficiency of evidence supporting a finding of an aggravating factor in *Jeffers*, the Court held that federal courts should apply the "rational factfinder" standard announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to state prisoner habeas corpus proceedings. *Jeffers*, 497 U.S. at 781, 110 S.Ct. at 3102. In his supplemental brief, Paradis argued for the first time that the facts do not support a finding beyond a reasonable doubt that he acted with "utter disregard for human life." This issue was not presented to the district court.

Our August 9, 1990 order did not authorize the raising of additional federal constitutional claims. Instead, the parties were requested to address whether recently decided Supreme Court cases had an impact upon the claims Paradis had already raised in his appeal.[1] The order did not permit Paradis to introduce an issue which had not been set forth in his habeas corpus petition. Because this issue was not presented to the district court, we will not review it. *See Willard v. California*, 812 F.2d 461, 465 (9th Cir.1987) (this court will not entertain claims which are not included in the petition to the district court).

1. The order read:
    Appellant is requested to file a supplemental brief, consisting of no more than twenty pages, on or before August 10, 1990, discussing the applicability, if any, of *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion); *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct.

## III.

In *Arave v. Creech*, —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), the Supreme Court held that the statutory aggravating factor of "utter disregard for human life," as defined by the Idaho Supreme Court in *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981), was not unconstitutionally vague. *Arave v. Creech*, —— U.S. at ——, 113 S.Ct. at 1545. In *Osborn*, the Idaho Supreme Court stated that "utter disregard" was "meant to be reflective of acts or circumstances surrounding the crime which exhibit the highest, the utmost, callous disregard for human life, i.e., the cold-blooded, pitiless slayer." *Osborn*, 631 P.2d at 201. The U.S. Supreme Court interpreted *Osborn* to differentiate those who kill with "utter disregard for human life" from premeditative killers— to refer instead to those who kill without feeling or sympathy. *Arave v. Creech*, —— U.S. at ——, 113 S.Ct. at 1541. The Court stated: "[P]remeditation is clearly not the sense in which the Idaho Supreme Court used the word 'cold-blooded' in *Osborn*. Other terms in the limiting construction—'callous' and 'pitiless'—indicate that the court used the word 'cold-blooded' ... [to refer] to a killer who kills without feeling or sympathy." *Id.* So construed, the Court held the aggravating factor was constitutional.

Paradis contends that Judge Haman did not apply the Idaho Supreme Court's definition of "utter disregard" when he found that the evidence demonstrated the presence of this aggravating factor. Citing *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), Paradis argues that his death sentence must be vacated. We disagree.

*Godfrey* is factually distinguishable from the matter before us. In *Godfrey*, the Su-

2934, 106 L.Ed.2d 256 (1989); *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), to the issues raised in this appeal. In addition, appellant should discuss any other relevant authority published since August 4, 1988 the date of oral argument in this matter.

preme Court held that the jury had been provided with an unconstitutionally vague definition of an aggravating factor. *Id.* at 431–32, 100 S.Ct. at 1766. In this matter, Judge Haman had the responsibility of determining whether Paradis acted with utter disregard for human life. In explaining his understanding of this term, Judge Haman stated:

> The facts ... leave no doubt that the killing of Kimberly Ann Palmer was an unprovoked killing of a defenseless human being accomplished in a coldly premeditated fashion for the sole reason of insuring her silence concerning the death of Scott Currier. If the phrase, "utter disregard for human life" means "cold-blooded" or "pitiless", then it is difficult to conjure up a situation in which the taking of a human life could be greatly more "cold-blooded" or "pitiless". The court believes that the term, "cold-blooded" means that, after having considerable time to reflect upon the situation and consider available options, the perpetrator coolly and deliberately decides to take a human life. That is the situation presented in this case. The term, "pitiless" adds little, if anything.

Unlike juries, "[t]rial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990). Since *Osborn* was decided by the Idaho Supreme Court nearly a year before Judge Haman made his findings and sentenced Paradis to death, we must presume that he knew and applied the proper definition of "utter disregard of human life."

■ Paradis nevertheless argues that Judge Haman's findings are so flawed as to overcome this presumption. To support this contention, Paradis asserts Judge Haman's findings are defective on the following grounds: (1) Judge Haman did not state explicitly that Paradis acted "without feeling or sympathy;" (2) Judge Haman's reference to a lack of "emotional upheaval" did not clearly refer to the time of the killing; and (3) Judge Haman made statements demonstrating that he interpreted "utter disregard" differently from the Idaho Supreme Court's definition in *Osborn.*

Paradis has not cited any authority which supports the proposition that trial judges must make explicitly detailed findings. In fact, the Supreme Court has suggested that the law is to the contrary. In *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), it was argued to the Court that the presumption of correctness under 28 U.S.C. § 2254(d) did not apply to an implied factual finding of juror bias. *Witt,* 469 U.S. at 430, 105 S.Ct. at 855. The Court rejected this contention and held that a state court is not required to detail for the record the facts necessarily included in the holding. *Id.; cf. Knaubert v. Goldsmith,* 791 F.2d 722, 727 (9th Cir.) ("[N]ot every finding of fact need be stated on the record in infinite detail and clarity. In certain circumstances we will recognize that a factual determination is implicit in the actions taken by a state court."), *cert. denied,* 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986). In this case, Judge Haman's statement that Paradis acted with utter disregard for human life necessarily included the implicit finding that Paradis acted in a cold-blooded manner, which, as the U.S. Supreme Court noted, means "without feeling or sympathy." *Arave v. Creech,* —— U.S. at ——, 113 S.Ct. at 1541.

In formulating his second contention, Paradis has taken Judge Haman's comments regarding the lack of "emotional upheaval" out of context. An examination of the entire statement reveals that Judge Haman was referring to the circumstances existing at the time of the murder. The record reads as follows:

> [T]he murder that was committed in this case was not what might be called a "commonplace" murder, or what has sometimes been described as a "normal" murder (if that can be possible). It did not involve an interfamilial situation or persons who were previously closely associated as do many, if not most, murders. There was not even a hint of any emotional upheaval as is often the case. There is no evidence that the use or abuse of alcohol or any controlled substance contributed to the situation as is usually the situation in the so-called "common" murder. *It was murder committed*

*in a cool, deliberate manner for a specific purpose, i.e., to cover up a prior murder.* (emphasis added). When read in context, it is clear that Judge Haman expressly found that "emotional upheaval" played no role at the time Kimberly Palmer was murdered. This lack of feeling or sympathy during the commission of a homicide fits squarely within the Idaho Supreme Court's interpretation of the words "utter disregard for human life." *See Osborn,* 631 P.2d at 201.

Paradis' third point centers upon Judge Haman's statement that he understood the "cold-blooded" component of "utter disregard for human life" to mean that "after having considerable time to reflect upon the situation and consider available options, the perpetrator coolly and deliberately decides to take a human life" and that " 'pitiless' adds little, if anything," to that definition. Paradis contends that Judge Haman's words demonstrate that the state trial judge applied "a sort of super-premeditation" test that is entirely different from the definition of "utter disregard" definition upheld by the U.S. Supreme Court.

Paradis' argument is unpersuasive. The very fact that Judge Haman used the words "cold-blooded" and "pitiless" demonstrates that he was mindful of the narrowing construction imposed upon the term "utter disregard" by the Idaho Supreme Court and bolsters the presumption that Judge Haman applied the correct definition. In addition, Judge Haman's understanding of "cold-blooded" conforms to the interpretation of the U.S. Supreme Court in *Arave v. Creech,* ____ U.S. ____, ____, 113 S.Ct. 1534, 1541, 123 L.Ed.2d 188 (1993). Although the first part of Judge Haman's statement alludes to the concept of premeditation, the later reference to "cool and deliberate" behavior evidences an understanding of the need to find a lack of an emotional basis for the homicidal conduct. The word "cool" denotes a "dispassionate manner." Webster's New World Dictionary 139 (1983). Moreover, the final part of Judge Haman's statement—that "pitiless" does not add to the definition of a cold-blooded killer—is consistent with the U.S. Supreme Court's determination in *Arave v. Creech* that the words "pitiless" and "cold-

blooded" refer to a lack of emotion. *Arave v. Creech,* ____ U.S. at ____, 113 S.Ct. at 1541. Judge Haman correctly noted that "pitiless" did not add to the definition of "utter disregard for human life," which, as interpreted by the Idaho Supreme Court, includes the synonymous term "cold-blooded."

## IV.

■ Paradis contends that he was deprived of his constitutional right to confront witnesses because Judge Haman considered hearsay evidence in making his sentencing determination. We review alleged violations of the Confrontation Clause *de novo. United States v. George,* 960 F.2d 97, 98 (9th Cir. 1992).

Paradis asserts that Judge Haman violated his right to confrontation in considering the following: (1) the contents of a private letter from Gibson and his in-camera statements; (2) evidence presented at Gibson's trial; (3) the findings made by Judge Haman in sentencing Gibson to death; and (4) Gibson's testimony at his trial.

In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), a state trial judge sentenced Gardner to death based in part upon material in a presentence report which Gardner had no opportunity to read, explain, or deny. The Supreme Court held that the trial judge violated Gardner's right to due process of law in considering the challenged material. *Id.* at 362, 97 S.Ct. at 1206. Citing *Gardner,* Paradis argues that Judge Haman's reliance on Gibson's letter and his statements in-camera in sentencing Paradis to death violated his right to due process.

Paradis has failed to demonstrate that Judge Haman considered Gibson's letter, or his in-camera statements, in arriving at his sentencing decision. In *Gardner* the trial judge explicitly stated that he relied on information not disclosed to the defendant in sentencing the defendant to death. *Id.* at 351, 97 S.Ct. at 1201. In this case, Judge Haman listed the things he would consider in determining whether any aggravating circumstance existed. Gibson's letter and in-camera statements, as well as the evidence from

Gibson's trial, were not referred to as factors the court intended to consider.[2] Paradis argues that Judge Haman nevertheless considered the evidence produced at Gibson's trial in sentencing Paradis. He cites the following statement, made regarding Gibson's trial by Judge Haman to support this contention:

> I did hear all of that and I don't know how I can entirely put it out of my mind in any event.

> I can say I'm not going to consider that, but I don't think a human being alive can totally put something out of their mind once they have heard it. I'm not a machine.

Paradis' argument is not persuasive. We agree with the district court that the quoted language was simply an honest recognition by Judge Haman of the fact that he is human and "bespeaks of ... no inference that [he] considered improper evidence in determining the appropriate sentence." *Paradis v. Arave*, 667 F.Supp. 1361, 1390 (D.Idaho 1987), *aff'd in part and rev'd in part*, 954 F.2d 1483 (9th Cir.1992), *vacated and remanded*, —— U.S. ——, 113 S.Ct. 1837, 123 L.Ed.2d 463 (1993).

■ In determining that Paradis exhibited "utter disregard for human life," Judge Haman quoted at length from the findings he made in the Gibson matter. Paradis contends that Judge Haman used findings of fact based on evidence produced in Gibson's case to condemn Paradis to death.

Paradis has mischaracterized Judge Haman's reliance on the Gibson findings. Judge Haman's findings in this matter were based upon evidence introduced at the guilt and sentencing phases of Paradis' trial. Sim-

ilar evidence concerning the circumstances surrounding the killing of Kimberly Palmer were introduced during the separate trials of Gibson and Paradis. Rather than use new words to describe the same events, Judge Haman repeated the Gibson findings during the Paradis sentencing proceedings. Paradis has failed to demonstrate that Judge Haman's findings are not supported by the record of his trial.

■ Judge Haman indicated that during Paradis' sentencing proceedings he would consider the testimony Gibson gave at his own trial in determining whether there were aggravating circumstances. The record shows that Judge Haman considered Gibson's testimony because Paradis had asked the court to review it in arriving at its sentencing decision. In his bill of particulars, Paradis stated that the "exculpatory testimony of Gibson is a most significant factor for the courts consideration.... It should weigh heavily in [Paradis'] favor." Concluding that Paradis had waived the requirement of Idaho Code § 19–2516 that evidence be presented in open court,[3] Judge Haman took judicial notice of Gibson's testimony. Paradis contends that consideration of this testimony denied him his right to confrontation because he had no opportunity to cross examine Gibson. Because Paradis explicitly requested that the court consider Gibson's testimony, he cannot now complain that the court assented. Any error in this regard was invited.

## V.

■ Paradis asserts that he was deprived of his right to due process of law because

---

2. Judge Haman stated:

> Thus, in considering the question of whether or not there are aggravating circumstances in this case, the court can look to the following:
>    1. The evidence admitted at trial.
>    2. The testimony of Thomas Henry Gibson admitted during the trial had in Kootenai Case No. 29470.
>    3. The testimony of Roseanna Moline received during the hearing concerning the motion for new trial.
>    4. Those portions of the presentence report not objected to by the defendant, including the report of psychological evaluation.
>    5. Arguments of counsel.

6. Oral statement of the defendant.
"Based upon the foregoing," Judge Haman decided that an aggravating circumstance existed and warranted a death sentence.

3. Idaho Code § 19–2516 provides:

> The circumstances must be presented by the testimony of witnesses examined in open court.... No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this ... section.

Judge Haman was biased against him. He argues that the fact that Judge Haman presided over Gibson's trial, sentenced Gibson to death, and acknowledged that he could not entirely erase from his mind evidence he was exposed to during Gibson's trial, demonstrates that Judge Haman was biased in favor of imposing a sentence of death.[4]

Paradis argues that even if we conclude that Judge Haman was not actually biased, the record shows that he appeared to be biased. Paradis asserts that we must reverse the denial of habeas corpus relief because of the principle that judges must not only do justice, but must appear to do justice. *See Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954) ("[J]ustice must satisfy the appearance of justice.") Paradis asserts that under the law of this circuit, once a judge appears to be biased, bias is presumed, and no inquiry into the judge's actual motivations is required. *See Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986) ("[W]hen the trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from review, and we must presume that the process was impaired.").

Paradis' entire argument is based upon the mistaken notion that a trial judge's exposure to evidence, standing alone, demonstrates bias. This supposition is unsound and contrary to existing law. For example, the First Circuit has held that the mere fact that a judge presided over the separate trial of a codefendant does not "constitute reasonable grounds for questioning his impartiality in a subsequent ... trial involving a remaining codefendant." *United States v. Cowden*, 545 F.2d 257, 265–66 (1st Cir.1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). The court further noted that judges "are necessarily exposed to [extrajudicial matters] in the course of ruling on the admission of evidence; and the judicial system could not function if judges ... had to with-

draw from a case whenever they had presided in a ... separate trial in the same case." *Id.*

■ The Supreme Court has held that defendants are entitled to a judge who has no direct personal interest in the outcome of a proceeding. *Ungar v. Sarafite*, 376 U.S. 575, 584, 84 S.Ct. 841, 846, 11 L.Ed.2d 921 (1964). For example, in *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), the Court determined that a judge who effectively served as the complainant, prosecutor, and judge in a contempt proceeding was personally biased in favor of conviction. *Id.* at 137–39. Similarly, the Court held that a defendant's persistent insulting personal attacks against the trial judge demonstrates a potential for bias against the defendant and that compels that a different judge preside over a contempt hearing based on such alleged improper conduct. *Mayberry v. Pennsylvania*, 400 U.S. 455, 466, 91 S.Ct. 499, 505, 27 L.Ed.2d 532 (1971). Moreover, a judge's financial interest in convicting a defendant creates a presumption of bias on the part of the judge, and requires reversal, despite lack of any indication that bias influenced the judge's decisions. *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927).

Each of these examples involve more than simple exposure to facts presented at the trial of a different person. In the matter *sub judice*, Paradis has failed to demonstrate that Judge Haman harbored any personal animosity or bias against Paradis. The fact that Judge Haman heard the evidence presented at Gibson's trial does not demonstrate that he failed to act impartially or appeared to act in a biased manner.

## VI.

■ Paradis maintains that he was denied effective assistance of counsel during the sen-

---

4. In making this argument, Paradis refers to statements published in a newspaper article. Since this extrajudicial material is not part of the record, it is not properly before this court and is not considered in the analysis which follows. *See* Fed.R.App.P. 10(a) ("The original papers and

exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the record on appeal in all cases.").

tencing proceedings.[5] He asserts that his trial counsel did not prepare adequately or present all of the matters that might have been raised in mitigation. Paradis notes that his trial counsel only offered the testimony of one witness regarding mitigating circumstances. Paradis contends that his attorney did not investigate or develop information regarding Paradis' oppressive upbringing, or that he is easily angered. Finally, Paradis emphasizes that the bill of particulars regarding mitigating evidence submitted by his trial counsel was only three pages long.

We review claims of ineffective assistance of counsel *de novo*. *United States v. Swanson*, 943 F.2d 1070, 1072 (9th Cir. 1991). The essence of an ineffective assistance of counsel claim is that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). To demonstrate ineffectiveness of counsel under *Strickland*, the accused must show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. The accused must also show "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* This standard is "rigorous" and "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). An accused must overcome a "strong presumption" of competency in order to prevail. *Smith v. Ylst*, 826 F.2d 872, 875 (9th Cir. 1987), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988). Paradis has not overcome that presumption.

Our independent review of the record discloses that trial counsel spent adequate time preparing for the sentencing hearing, competently responded to inaccuracies and ambigu-ities in the presentence report, and presented testimony intended to establish that Paradis was amenable to rehabilitation. Paradis has failed to demonstrate that trial counsel's assistance was ineffective.

## VII.

Paradis contends that the trial court imposed the sentence of death without a finding that he demonstrated a sufficient level of culpability to warrant the ultimate punishment. He also argues that the death penalty is a disproportionate punishment as applied to him and violates his rights under the Eighth Amendment.

The Supreme Court has determined that the death penalty is not a disproportionate punishment for those who kill, attempt to kill, intend to kill, intend that lethal force be applied, or act with reckless indifference to human life while playing a major role in the felony that results in murder. *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Moreover, the Court has indicated that the requisite culpability finding may be made at any point in state proceedings and is thereafter entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). *Cabana v. Bullock*, 474 U.S. 376, 387–88, 106 S.Ct. 689, 697–98, 88 L.Ed.2d 704 (1986).

The record shows that the trier of fact made a culpability finding. The jury was instructed that in order to convict Paradis, it must find that Paradis performed acts intended to kill Kimberly Palmer. The jury was also admonished that it was required to find whether Paradis' "intent to cause death was willful, deliberate, and premeditated." *Paradis v. Arave*, 667 F.Supp. at 1394. Thus, the jury's verdict of guilt impliedly included a finding that Paradis intended to kill Kimberly Palmer. Furthermore, Paradis concedes that the "jury found that [he] at least aided and abetted Palmer's murder." This concession satisfies the *Tison* standard of culpability—major participation in a mur-

---

5. In his brief, Paradis relies on material published in a newspaper article and other documents to support this contention. As noted in footnote 4 above, however, this extrajudicial material is not properly before this court. *See* Fed.R.App.P. 10(a).

der-producing felony and reckless indifference to human life. *Tison,* 481 U.S. at 158, 107 S.Ct. at 1688. The record contains the requisite finding of culpability.

## CONCLUSION

Although consideration of Paradis' claims is not barred by the new rule proscription announced in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), none of them merits reversal of the denial of the petition for habeas corpus. Paradis' claim that there is insufficient evidence of an utter disregard for human life to meet the requirements of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), must be dismissed for failure to raise it in the district court.

The denial of habeas corpus relief is AFFIRMED. The claim that the facts do not demonstrate beyond a reasonable doubt that Paradis acted with utter disregard for human life is DISMISSED.