**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Dec 03 2013, 5:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**VICKIE YASER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIE G. PARGO, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-PC-408 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-0904-PC-40552

**December 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Petitioner Willie G. Pargo was convicted of Class A felony dealing in cocaine, Class C felony possession of cocaine, Class C felony possession of cocaine with a firearm, Class B felony unlawful possession of a firearm by a serious violent felon, Class C felony dealing in marijuana, and Class D felony possession of marijuana. At sentencing, the trial court found Pargo's convictions for Class C felony possession of cocaine and Class D felony possession of marijuana to be lesser-included offenses and sentenced Pargo to an aggregate term of fifty-five years. Pargo's convictions were affirmed on direct appeal. Pargo sought post-conviction relief, arguing that he received ineffective assistance of trial counsel and that he did not receive a fair trial. Pargo also argued that he did not receive fair post-conviction consideration. Pargo now appeals from the denial of his petition for post-conviction relief. Concluding that Pargo did not receive ineffective assistance of trial counsel and that Pargo failed to establish that he did not receive a fair trial or fair post-conviction consideration, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Our opinion in Pargo's direct appeal instructs us as to the underlying facts leading to this post-conviction appeal:

> Testimony and exhibits, including a videotape recording, established the following facts. On the afternoon of March 13, 2009, various Indianapolis Metropolitan Police Department officers were engaged in a narcotics investigation of which Pargo was the target. The house at 4001 Owster Lane was under surveillance, and officers were placed in the neighborhood nearby.
> A maroon Camaro arrived and parked in front of the house at 4001 Owster Lane. A man with a backpack, later identified as David Hoagland, went to the door, apparently found no one at home, and returned to his car—

2

where he proceeded to wash its windows. Pargo drove a car into the driveway, and the garage door opened. As the garage door was going up, Hoagland grabbed his apparently empty backpack, walked to Pargo's car, and talked to Pargo. Hoagland then walked into the garage, as Pargo's car entered it, and the garage door closed.

A few minutes later, a black Chrysler LHS pulled into the driveway at 4001 Owster Lane. A woman—later identified as Angela Coburn—and her ten-year old daughter got out, and they entered the house.

Shortly thereafter, Hoagland emerged from the house carrying what appeared to be a loaded backpack. He placed the backpack inside the Camaro's trunk and covered it. Hoagland drove away and was observed speeding down a nearby street. He was stopped by police, and his backpack was found to contain two pounds of marijuana.

Shortly after Hoagland drove away from 4001 Owster Lane, a red Tahoe arrived and parked in the driveway. A man later identified as Darryl Williams got out and went into the house. A few minutes later Williams emerged carrying a large black trash bag, which he placed in the back of the Tahoe. After Williams sped away, he was stopped by police on a nearby street. As the officer approached him, Williams was observed talking on his cell phone. Minutes later, while police spoke to Williams, Pargo drove "very slowly" by, "staring at [them]," then "circled back, ... driving by slowly again," and parked nearby. (Tr. 65, 66). Police recovered ten pounds of marijuana in the black trash bag in the back of Williams' Tahoe. Meanwhile, Pargo was detained at his car. While speaking to an investigating officer, Pargo asked to smoke one of "his cigarettes." (Tr. 197). Given permission, Pargo smoked a cigarette from the "Newport cigarettes" confiscated from Pargo by the police. *Id.*

Several minutes later, the black LHS emerged from the garage at 4001 Owster Lane with Coburn and her daughter inside. Coburn was stopped shortly thereafter, and she consented to a search of the car. From its trunk, police recovered a large black garbage bag containing 34 one-pound bags of marijuana; a clear plastic bag of marijuana; a digital scale; and two metal tins containing marijuana and cocaine. A loaded 40 caliber Smith and Wesson handgun, for which Coburn had a valid permit, was found inside the car. Coburn also had oxycodone and hydrocodone pills in her pockets.

Coburn gave her signed consent for the police to search the house at 4001 Owster Lane. A bag of marijuana was found in the freezer compartment of the refrigerator. In the dresser close to the bed in the master bedroom, the top right drawer contained a bag of cocaine, a small bag of marijuana, a roll of black trash bags, several plastic baggies, and a photograph of Pargo. The top center dresser drawer contained a Newport cigarette box with a large chunk of crack cocaine inside of it, plastic baggies, a digital scale with cocaine residue

3

on it, two weights used to calibrate a scale, a pouch labeled "DADDY'S MONEY," and a Dish Network bill addressed to Pargo at 4001 Owster Lane. Some loose marijuana and a baggie were on the floor between the bed and the dresser, and marijuana stems were on the nightstand next to the bed. A Bushmaster 9 millimeter semi-automatic weapon "was inside the closet behind the—where the door would open into the closet so you wouldn't see it unless you were actually in the closet...." (Tr. 97). The closet contained "men's clothing," such as "jeans ... hanging up" and "some on the floor," some women's clothing, and "five or six pairs" of men's shoes. (Tr. 97, 107). The men's clothing was "quite large," of a size "consistent with" Pargo's large size. (Tr. 98).

On March 13, 2009, as the house was being searched, Pargo made a taped statement to police. He admitted that he had sold two pounds of marijuana to Hoagland and ten pounds of marijuana to Williams. He further admitted that he had stored the marijuana at "4001 Owster,"—specifically, in the "closet." (Ex. 60; Ex. 61, p. 4). Pargo also admitted that he had phoned Coburn and asked her to "get the marijuana out of the house ... and the cocaine" because he "saw the police." (Tr. 165, 166; Ex. 60; Ex. 61, p. 5). Finally, Pargo admitted that he knew there was "a gun, a firearm" in the house, although he attributed its ownership to Coburn. (Ex. 60; Ex. 61, p. 6).

*Pargo v. State*, 49A02-1005-CR-573 *1-2 (Ind. Ct. App. February 10, 2011), *trans. denied*.

On April 17, 2009, the State charged Pargo with Class A felony dealing in cocaine,

Class C felony possession of cocaine, Class C felony possession of cocaine with a firearm,

Class B felony unlawful possession of a firearm by a serious violent felon, Class C felony

dealing in marijuana, and Class D felony possession of marijuana. *Id*. at *2.

Pargo waived trial by jury and was tried to the bench on March 30, 2010. In addition to the above, the trial court heard evidence that all mail, including a water bill, found in the house at 4001 Owster Lane was addressed to Pargo. A lease naming Pargo as a tenant and signed by him was entered into evidence. Police found no evidence reflecting personal use of cocaine at 4001 Owster Lane. On March 13th, the police had recovered $1,382.00 in cash from Pargo, and at the time of his arrest approximately one month later, they recovered an additional $513.00 from him. The police seized thirteen vehicles that were "associated" with Pargo. (Tr. 157). Although the vehicles were "purchased" by Pargo, none were registered to him. (Tr. 167). On March 13th, one of these vehicles was being driven by Pargo and one by Coburn, and two were

4

parked at the 4001 Owster Lane address. The detective leading the Pargo investigation testified that it was common practice for drug dealers not to personally register vehicles in their names as a method of protecting assets from seizure.

According to stipulated evidence, approximately one ounce of cocaine was recovered from the car driven by Coburn and two and one-half ounces recovered from the house at 4001 Owster Lane. Detective Ingram, who had been involved in approximately 700 narcotics investigations, testified that cocaine sold "for about $1,000.00 an ounce," and the three and a half ounces recovered would be valued at "roughly $3,500.00." (Tr. 186). He further testified that the most common amount of cocaine consumed for personal use was a twentieth of a gram; and that the amount the police recovered was approximately "96 grams of cocaine," which if sold for $20.00 "a unit," would be "$100.00 per gram," or a total of $9,600.00. (Tr. 188). If the cocaine were "cut[ ]" with an "agent," he testified, the profit would be even greater. (Tr. 189). Ingram further testified that drug dealers "usually have things like scales to weigh out their product"; "baggies" or "trash bags, depending on what kind of drugs they're dealing"; "a decent amount of money on them"; and "weapons, guns to protect themselves and their product." (Tr. 192). In addition, "larger quantities" of drugs are "associated with drug dealing." *Id*.

Pargo testified at trial. According to Pargo, he had not planned to meet Hoagland at 4001 Owster Lane on March 13th, but nevertheless sold him marijuana when he found Hoagland at the house. Pargo admitted that he also sold marijuana to Williams that day. However, Pargo denied any knowledge of cocaine or the firearm at 4001 Owster Lane.

On April 6, 2010, the trial court announced its decision. With respect to the cocaine and firearm offenses, the trial court stated that it had applied "the concept of constructive possession" pursuant to *Massey v. State*, 816 N.E.2d 979 (Ind. Ct. App. 2004). (Tr. 262). It found Pargo guilty as charged.

*Id.* at *3. On May 3, 2010, the trial court sentenced Pargo to an aggregate term of fifty-five years. Pargo's convictions were subsequently affirmed on direct appeal. *Id*. at *6.

On November 16, 2011, Pargo filed a *pro se* petition for post-conviction relief ("PCR"). On July 18, 2012, Pargo, by counsel, filed a motion for a change of judge. The post-conviction court denied Pargo's motion for a change of judge on July 25, 2012. The post-conviction court conducted an evidentiary hearing on Pargo's amended PCR petition on

December 7, 2012. During this hearing, Pargo, by counsel, presented argument in support of his PCR petition. On April 12, 2013, the post-conviction court issued an order denying Pargo's request for PCR.

## DISCUSSION AND DECISION

Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Collier v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v.*

6

*State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

### I. Whether Pargo Received Ineffective Assistance of Trial Counsel

The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes,

7

poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. A petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

Pargo challenges the post-conviction court's determination that his trial counsel, Ralph Staples Jr., was not ineffective. Specifically, Pargo claims that Staples was ineffective for failing to avoid a conflict of interest, for convincing him to waive his right to a trial by jury, and for failing to call certain witnesses to testify during trial. The State, for its part, argues that the post-conviction court properly denied Pargo's request for PCR.

### A. Failure to Avoid a Conflict of Interest

Pargo claims that Staples was ineffective for failing to avoid a conflict of interest. Specifically, Pargo argues that Staples had a conflict of interest because Staples, along with another attorney, had previously entered an appearance in a case arising from a prior arrest of Coburn, Pargo's co-defendant in the underlying matter. The State, for its part, argues that

Staples was not ineffective in this regard because Staples's prior representation of Coburn did not adversely affect Staples's representation of Pargo.

"The federal constitutional right to effective assistance of counsel necessarily includes representation that is free from conflicts of interest." *Woods v. State*, 701 N.E.2d 1208, 1223 (Ind. 1998) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). "To establish a violation of the Sixth Amendment due to a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). Once an actual conflict and adverse impact are shown, prejudice is presumed. *Id.* (citing *Burger v. Kemp*, 483 U.S. 776, 783 (1987)). "An adverse effect on performance caused by counsel's failure to act requires a showing of (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict." *Id.* "The mere possibility of a conflict of interest is insufficient to justify reversal of a conviction." *Coleman v. State*, 694 N.E.2d 269, 273 (Ind. 1998) (citing *Cuyler*, 446 U.S. at 350).

Staples admitted during the post-conviction proceedings that he, along with another attorney, had entered an appearance in Coburn's case relating to her prior arrest before being hired to represent Pargo in the underlying matter. Staples testified, however, that while he assumed that he spoke to Coburn, he had "no independent recollection" of any conversation with Coburn regarding her case. PCR Tr. p. 19. Staples further testified that despite his prior

9

representation of Coburn, he believed that he could have called Coburn to testify at Pargo's trial if such testimony was deemed to be beneficial to Pargo's case. Staples, however, made the tactical decision not to call Coburn to testify at Pargo's trial because he had been informed by Coburn's counsel that Coburn would assert her Fifth Amendment right and refuse to testify. Staples also based this tactical decision on his belief that even if Coburn would testify, Coburn would not make a credible witness.

Again, prejudice is presumed when one demonstrates that an actual conflict existed and that counsel's representation was adversely affected by the conflict. *See Woods*, 701 N.E.2d at 1223. Here, however, prejudice is not presumed because Pargo failed to demonstrate that Staples's representation of Pargo was adversely affected by his prior representation of Coburn. Pargo has not established that Staples learned any confidential information from Coburn or that he even discussed the specific merits of Coburn's case prior to his withdrawal. In addition, Pargo has not established that Staples failed to undertake a plausible strategy or tactic because of his prior representation of Coburn. As such, we conclude that Pargo has failed to establish that he suffered prejudice as a result of trial counsel's alleged failure to avoid a conflict of interest. Pargo has failed to establish that trial counsel provided ineffective assistance in this regard.[1]

---

[1] We note that in raising this claim, Pargo alleges that Staples violated Indiana Rule of Professional Conduct 1.7, dealing with conflicts of interest between counsel and current clients. Rule 1.7 provides, in relevant part, as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

10

## B. Waiver of Right to Trial by Jury

Pargo also claims that Staples provided ineffective assistance by convincing Pargo to waive his right to a trial by jury.

> The right to a trial by jury is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, § 13 of the Indiana Constitution, and may be waived by a knowing, intelligent and voluntary waiver. *Poore v. State*, 681 N.E.2d 204, 206 (Ind. 1997); *Robey v. State*, 555 N.E.2d 145, 148 (Ind. 1990). The defendant must express his personal desire to waive a jury trial and such personal desire must be apparent from the record. *Poore*, 681 N.E.2d at 206.

*Coleman*, 694 N.E.2d at 278. The Indiana Supreme Court has held that a "defendant's decision to waive a jury trial, on counsel's advice, [is] a strategic decision which does not constitute ineffective assistance of counsel." *Chambers v. State*, 496 N.E.2d 767, 768 (Ind. 1986). The Indiana Supreme Court has also held that "[i]t is not proper for this Court to second-guess an attorney through the distortions of hindsight." *Page v. State*, 615 N.E.2d 894, 896 (Ind. 1993).

Initially, we note that Pargo does not claim that he did not indicate to the trial court that he wished to waive his right to trial by jury or that such desire was not apparent from the

---

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Having concluded that Pargo has failed to establish that Staples's representation of him was adversely impacted by Staples's prior representation of Coburn, we conclude that, likewise, Pargo has failed to establish that Staples's representation of Coburn was directly adverse to his representation of Pargo or that there is a significant risk that Staples's representation of Pargo would be materially limited due to his former representation of Coburn. As such, we find Pargo's assertion that Staples violated Rule 1.7 to be unpersuasive.

11

record. Rather, in claiming that Staples provided ineffective assistance, Pargo argues that he was reluctant to waive his right to a trial by jury but that he did so at Staples's suggestion. During the post-conviction proceedings, Staples testified that while he does not generally recommend waiver of one's right to a trial by jury, in the instant matter he believed that the trial court would be more likely to accept Pargo's technical argument relating to constructive possession than a jury. Specifically, Staples testified that he believed a bench trial was in Pargo's best interests because he believed

> twelve people viewing the evidence … as I believe[d] the evidence was to [be] proffered by the State, I thought that twelve people would not give a second thought about finding him guilty, in my experience.… I believed the chances with [the trial judge was] better based on the technical argument.… Which would have been no direct evidence circumstantial evidence not being sufficient, can't find constructive possession based on what the evidence was.… I thought that twelve people could be and I'm saying this not being flip, could be fooled by the State into believing that Mr. Pargo was responsible for whatever was in the house whereas a Judge could make the critical analysis required to differentiate actual from constructive possession.… I thought a Judge would understand the technical argument better than twelve jurors.

PCR Tr. pp. 28-29.

Again, as the Indiana Supreme Court has previously held, Pargo's decision to waive a jury trial, on Staples's advice, is a strategic decision which we will not second-guess through the distortions of hindsight and does not constitute ineffective assistance of counsel. *See generally Page*, 615 N.E.2d at 896; *Chambers*, 496 N.E.2d at 768. Pargo also argues that Staples was ineffective for suggesting that he waive his right to a trial by jury because common sense dictates that a jury would be more likely to reject a finding of guilt. Pargo, however, has provided no authority in support of this argument, and we find none.

12

Accordingly, we conclude that Staples did not provide ineffective assistance of counsel by recommending that Pargo waive his right to a jury trial.

### C. Failure to Call Certain Witnesses to Testify During Trial

Pargo also claims that Staples provided ineffective assistance by failing to call certain witnesses, *i.e.*, Coburn and Leslie Long, to testify during trial. In raising this claim, Pargo argues that "[w]ithout the only two witnesses, besides Pargo, who could contest the State's allegations, Pargo was left defenseless." Appellant's Br. pp. 21-22. For its part, the State argues that Pargo's claim constitutes a request for this court to second-guess trial strategy through the distortions of hindsight. Again, it is improper for this court to do so. *See Page*, 615 N.E.2d at 896.

"[I]n the context of an ineffective assistance of counsel claim, 'a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess.'" *Curtis v. State*, 905 N.E.2d 410, 415 (Ind. Ct. App. 2009) (citing *Johnson v. State*, 832 N.E.2d 985, 1003 (Ind. Ct. App. 2005), *trans. denied*). As was discussed above, with respect to Coburn, Staples made the tactical decision not to call Coburn to testify at Pargo's trial because he had been informed by Coburn's counsel that Coburn would assert her Fifth Amendment right and refuse to testify. Staples also based this tactical decision on his belief that even if Coburn had been willing to testify, Coburn would not have made a credible witness. Staples testified that despite Pargo's contrary belief, Coburn's attorney informed him that Coburn, if forced to testify, would not have accepted responsibility for the cocaine. Furthermore, upon hearing the testimony which Pargo claimed Coburn would have provided

13

at his trial if asked to testify, the post-conviction court agreed with Staples's determination that Coburn would not have made a credible witness. The post-conviction court found that Coburn's proffered testimony was "completely lacking in credibility," noting that the proffered testimony contradicted both the evidence presented at Pargo's trial as well as the factual basis made at Coburn's guilty plea hearing. Appellant's App. p. 114.

With respect to Long, it is unclear how Long's testimony, if elicited, would have aided Pargo's defense. Long testified during the post-conviction proceedings that Pargo lived with her at the time of his arrest, but that he also spent nights away from their residence. However, it is unclear what impact this evidence would have had at trial in light of the overwhelming evidence of Pargo's involvement in the drug operation coupled with the evidence that the lease and bills relating to the home in question were all in Pargo's name and that personal belongings which appeared to belong to Pargo were found in the home. Long's proffered testimony did not contradict the State's evidence. At most, Long's proffered testimony would have potentially established that Pargo spent some nights away from the home which he used as a base for his drug operation.

Again, we defer to counsel's strategic and tactical decisions and assume that counsel performed adequately. *See Smith*, 765 N.E.2d at 585. As such, we will not second guess Staples's tactical decision not to call Coburn or Long to testify on appeal. *See Curtis*, 905 N.E.2d at 415; *see also Wrinkles v. State*, 749 N.E.2d 1179, 1191 (Ind. 2001) (providing that which witnesses to call is a tactical decision which we will not second-guess); *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993). Accordingly, we conclude that Pargo cannot

14

establish that he suffered ineffective performance of trial counsel because he has failed to demonstrate that his trial counsel's performance was deficient. *See Reed*, 866 N.E.2d at 769 (providing that in order to prove a claim of ineffective assistance of counsel, petitioner must prove both prongs set forth in *Strickland*, *i.e.*, defective performance and prejudice); *see also Grinstead*, 845 N.E.2d at 1031 (providing that a claim of ineffective assistance of counsel can be disposed of on either prong).

## II. Whether the Post-Conviction Court Erred by Denying Pargo's PCR Petition After Determining that Pargo Received a Fair Trial and Post-Conviction Hearing

Pargo also contends that the post-conviction court erred in denying his PCR petition because the judge, who presided over both the trial and post-conviction proceedings, should have recused himself from Pargo's case. Specifically, Pargo claims that the judge must have been biased against Pargo because the judge heard references to Pargo by the State during Coburn's guilty plea hearing. The State, for its part, argues that denial of Pargo's claim for PCR was proper because the record is devoid of any evidence that the judge was biased against Pargo.

> All defendants in a criminal prosecution have a due process right to trial before an impartial tribunal. *See Harrington v. State*, 584 N.E.2d 558, 561 (Ind. 1992). Under our current rule, a request for change of judge due to bias or prejudice should be granted if the historical facts recited support a reasonable inference of bias or prejudice. Ind. Criminal Rule 12(B). Accordingly, a change of judge is neither "automatic" nor "discretionary." *See Whitehead v. Madison County Circuit Court*, 626 N.E.2d 802, 803 (Ind. 1993) (interpreting identical language governing a change of judge in post-conviction proceedings).

*Blanche v. State*, 690 N.E.2d 709, 714 (Ind. 1998) (footnote omitted). The same is true for a

request for a change of judge in post-conviction cases. *See Whitehead*, 626 N.E.2d at 803.

Generally, a trial judge's exposure to evidence through judicial sources is, alone, insufficient to establish bias. *Sturgeon v. State*, 719 N.E.2d 1173, 1181 (Ind. 1999). Likewise, prior judicial rulings generally do not support a rational inference of prejudice. *Voss v. State*, 856 N.E.2d 1211, 1217 (Ind. 2006) (citing *Garland v. State*, 788 N.E.2d 425, 433 (Ind. 2003)). "Adverse rulings and findings by a trial judge from past proceedings with respect to a particular party are generally not sufficient reasons to believe the judge has a personal bias or prejudice. *Id*. (citing *Lasley v. State*, 510 N.E.2d 1340, 1342 (Ind. 1987); *Thomas v. State*, 486 N.E.2d 531, 533 (Ind. 1985)). "The mere assertion that certain adverse rulings by a judge constitute bias and prejudice does not establish the requisite showing. *Id*. (citing *Ware v. State*, 567 N.E.2d 803, 806 (Ind. 1991)).

### A. Trial Proceedings

Pargo claims that the trial court must have been biased against him because, prior to rendering a decision in Pargo's bench trial, the judge heard references to Pargo's criminal involvement during the guilty plea hearing for Coburn. Specifically, Pargo claims that these references amounted to *ex parte* communications such that would warrant a change of judge. We disagree and note that both the Indiana Supreme Court and federal circuit courts have held to the contrary.

In *Sturgeon*, prior to Sturgeon's murder trial, the trial court sentenced Sturgeon's girlfriend and confederate, Leslie Hauk. 719 N.E.2d at 1180. In sentencing Hauk, the trial judge stated the belief that Hauk and Sturgeon worked together to kill the victim. *Id*. The

16

trial court further stated that "[o]n accomplice liability, I do think the jury believed that Mr. Surgeon was the more culpable." *Id.* Sturgeon argued that these comments supported a rational inference of prejudice since the judge had already made conclusions on the merits of Sturgeon's case. *Id.* Upon review, the Indiana Supreme Court held that the fact that the trial court presided over Hauk's sentencing hearing and may have heard evidence involving Sturgeon does not, in itself, raise an inference of bias or prejudice. *Id.* at 1183. Thus, the Indiana Supreme Court concluded that the trial judge's decision to deny Sturgeon's motion for a change of judge was not clearly erroneous. *Id.*

In reaching its conclusion, the *Sturgeon* Court cited to *Paradis v. Arave*, 20 F.3d 950 (9TH Cir. 1994), *cert. denied.* In *Paradis*, the trial judge presided over the trial of Paradis's confederate and sentenced the confederate to death before presiding over Paradis's trial. 20 F.3d at 958. Paradis asserted the trial judge was biased against him based on facts presented at the confederate's trial. *Id.* at 957-58. The Ninth Circuit disagreed, holding "[t]he fact that [the trial judge] heard evidence presented at [the other] trial does not demonstrate that he failed to act impartially or appeared to act in a biased manner." *Id.* at 958.

Similarly, in the instant matter, the fact that the trial judge presided over Coburn's sentencing where the court heard statements regarding Pargo does not, in itself, raise an inference of bias or prejudice. Furthermore, it is well-established that where, as here, the case is tried before the court, the trial judge is presumed to disregard improper evidence in reaching its decision. *Konopasek v. State*, 946 N.E.2d 23, 28 (Ind. 2011); *Coleman v. State*, 558 N.E.2d 1059, 1062 (Ind. 1990); *Chambers*, 496 N.E.2d at 768. Nothing in the record

17

indicated that the judge considered or relied on any statement made during Coburn's guilty plea hearing in determining that Pargo was guilty of the charged offenses. Accordingly, we presume that the judge disregarded any improper statements or evidence to which it might have been made aware prior to reaching its decision. As such, we conclude that Pargo failed to demonstrate that he failed to receive a fair trial.

## B. Post-Conviction Proceedings

With respect to the post-conviction proceedings, Pargo claims that the post-conviction court should have granted his request for a change of judge, again citing to the fact that the judge presided over Coburn's guilty plea hearing before rendering a verdict in Pargo's underlying criminal case. For the reasons stated above, we conclude that Pargo has failed to demonstrate that the judge was biased against Pargo or that the judge exhibited the appearance that the judge could not act impartially in reviewing Pargo's claims. As such, we conclude that the post-conviction court did not err in denying Pargo's request for a change of judge. Accordingly, we further conclude that the post-conviction court did not err in denying Pargo relief on this ground.

In sum, we conclude that Pargo failed to establish that Staples provided ineffective assistance at trial. Pargo also failed to establish that he did not receive a fair trial or fair post-conviction consideration. Accordingly, we conclude that Pargo failed to establish that the post-conviction court erred in denying Pargo's request for PCR.

The judgment of the post-conviction court is affirmed.

BAILEY, J, and MAY, J., concur.

18